# United States Court of Appeals

*for the*

# Third Circuit

Case No. 25-2085

MARTIN AND HARRIS PRIVATE LIMITED,

*Plaintiff-Appellant,*

– v. –

MERCK & CO., INC.,

*Defendant-Appellee.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 2:23-CV-23418
HONORABLE CLAIRE C. CECCHI, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT AND APPENDIX
## Volume 1 of 4 (Pages A1 to A19)

STEVEN BACKFISCH
JAY LAVROFF
LINDABURY, MCCORMICK,
   ESTABROOK & COOPER, P.C.
53 Cardinal Drive
Westfield, New Jersey 07091
(908) 233-6800

ADAM J. SAFER
JUSTIN D. HELLER
GOULSTON & STORRS PC
730 Third Avenue, 12th Floor
New York, New York 10017
(212) 878-6900

– and –

SALOME SALIA
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, Massachusetts 02109
(617) 482-1776

*Attorneys for Plaintiff-Appellant*

 COUNSEL PRESS    (800) 4-APPEAL • (383913)

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT ......................................................1

ISSUES TO BE PRESENTED FOR REVIEW ....................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............3

STATEMENT OF THE CASE.............................................................3

    A.    Over Decades, M&H Helped Organon Develop a Successful
        Presence in India ......................................................................4

    B.    Schering Plough's Decision to Terminate M&H ................8

    C.    Merck's Decision to Terminate M&H ...............................10

    D.    The India Action...................................................................12

    E.    The 1782 Proceeding...........................................................14

    F.    The Present Action ...............................................................17

STANDARD OF REVIEW .................................................................18

SUMMARY OF ARGUMENT ...........................................................19

ARGUMENT .......................................................................................24

I.    THE DISTRICT COURT ERRED IN DISMISSING THE
    COMPLAINT BASED ON *FORUM NON CONVENIENS* .........................24

    A.    The District Court Erred in Deciding Material Factual Disputes
        Against M&H Without Giving M&H an Opportunity to Be
        Heard .....................................................................................27

    B.    The District Court Erred in According Insufficient Deference to
        M&H That Courts Regularly Accord to a Plaintiff's Choice of
        Forum ....................................................................................32

    C.    The District Court Erred in Concluding That Private and Public
        Interest Factors Weigh in Favor of Dismissal.....................34

    D.    M&H Cannot Obtain a Meaningful Remedy in India Due to
        Extreme Delay, Making India an Inadequate Alternative Forum.......48

CONCLUSION....................................................................................51

CERTIFICATION OF BAR MEMBERSHIP.......................................53

CERTIFICATION OF COMPLIANCE ...............................................54

CERTIFICATE OF SERVICE ............................................................55

i

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Acuna-Atalaya v. Newmont Mining Corp.*,
   765 F. App'x 811 (3d Cir. 2019) ................................................................. 48, 49

*Armada v. Kuzovkin*,
   2021 WL 4026177 (N.J. Super. Ct. App. Div. Sept. 3, 2021) ........................ 26, 43

*Bhatnagar v. Surrendra Overseas Ltd.*,
   52 F.3d 1228 (3d Cir. 1995) ..................................................................... 49

*Biopharma v. Inhibrx, Inc.*,
   2022 WL 22905024 (D. Del. Oct. 25, 2022) ............................................... 27

*Burke v. Quartey*,
   969 F. Supp. 921 (D.N.J. 1997) ............................................................... 34, 37

*Charles v. QVC, Inc.*,
   2025 WL 1648432 (E.D. Pa. June 10, 2025) ............................................... 27

*Curiale v. Tiber Holding Corp.*,
   1997 WL 597944 (E.D. Pa. Sept. 18, 1997) ............................................... 43

*Curtis v. Galakatos*,
   19 F.4th 41 (1st Cir. 2021) ...................................................................... 26

*Dibble v. Torax Med., Inc.*,
   2025 WL 2250561 (8th Cir. Aug. 7, 2025) ................................................ 25, 37

*Dow Chemical Co. v. Castro Alfaro*,
   786 S.W.2d 674 (Tex. 1990) ................................................................... 31

*Erbey Holding Corp. v. Blackrock Fin. Mgmt., Inc.*,
   78 V.I. 206, 2023 WL 8432847 (V.I. Super. Ct. 2023) ................................ 40

*Fiscus v. Combus Fin. AG*,
   2006 WL 1722607 (D.N.J. June 20, 2006) ................................................ 28

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) .............................................................................. 35

*Howden N. Am. Inc. v. Ace Prop. & Cas. Ins. Co.*,
   875 F. Supp. 2d 478 (W.D. Pa. 2012) ...................................................... 28

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001) ...................................................................... 23

*Joint Stock Soc. v. Heublein, Inc.*,
   936 F. Supp. 177 (D. Del. 1996) .............................................................. 40

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3d Cir. 1988) ................................................................. passim

*Leon v. Millon Air, Inc.*,
  251 F.3d 1305 (11th Cir. 2001) ............................................................49

*Lony v. E.I. Du Pont de Nemours & Co.*,
  886 F.2d 628 (3d Cir.1989) ........................................................ passim

*Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*,
  13 F.3d 69 (3d Cir. 1993) .................................................... 27, 29

*M&B IP Analysts, LLC v. Cortica-US, Inc.*,
  2020 WL 3411027 (D.N.J. June 22, 2020) ........................................27

*Ma v. Li*,
  2022 WL 1165623 (D.N.J. Apr. 20, 2022) ..................... 26, 36, 40, 47

*Men of Steel Rebar Fabricators, LLC v. Collavino Corp.*,
  2017 WL 2981231 (D.N.J. June 20, 2017) ........................................28

*Nandjou v. Marriott Int'l, Inc.*,
  2021 WL 140775 (1st Cir. Jan. 15, 2021) .........................................42

*Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*,
  2014 WL 4724625 (D.N.J. Sept. 23, 2014)................................. 38, 46

*Nieminen v. Breeze-E., a Div. of Transtechnology Corp.*,
  736 F. Supp. 580 (D.N.J. 1990) ............................................... 26, 32

*OKS Grp., LLC v. Axtria Inc.*,
  2015 WL 9694786 (D.N.J. Dec. 15, 2015) ........................................28

*Ryanair DAC v. Booking Holdings Inc.*,
  2021 WL 7209367 (D. Del. Dec. 27, 2021) .......................................27

*Shi v. New Mighty U.S. Tr.*,
  918 F.3d 944 (D.C. Cir. 2019) ..........................................................24

*Skycliff IT, LLC v. N.S. Infotech Ltd.*,
   2018 WL 2332219 (D.N.J. May 23, 2018) ................................. 37, 43

*Specialty Assistance Claim Servs., Inc. v. Colin Luke Assocs., Ltd.*,
  2004 WL 2988516 (E.D. Pa. Dec. 27, 2004) ....................................28

*Synygy, Inc. v. ZS Assocs., Inc.*,
  2009 WL 1532117 (3d Cir. June 1, 2009)..........................................38

*Tech. Dev. Co. v. Onischenko*,
  174 F. App'x 117 (3d Cir. 2006)................................................ passim

*Tech. Dev. Co. v. Onischenko*,
  536 F. Supp. 2d 511 (D.N.J. 2007)........................................... passim

*Tedesco Mfg. Co. v. Honeywell Int'l Inc.*,
  371 F. App'x 316 (3d Cir. 2010).......................................................27

iii

*Tradimpex Egypt Co. v. Biomune Co.*,
   777 F. Supp. 2d 802 (D. Del. 2011)........................................................47

*Trout v. Marriott Int'l, Inc.*,
   2019 WL 13248861 (D.N.J. June 24, 2019) ........................................28

*Vivas v. Boeing Co.*,
   392 Ill. App. 3d 644, 659 (2009) ................................................. 40, 43

**Statutes**

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1332(a) ......................................................................................1

28 U.S.C. § 1782............................................................................................2

iv

## JURISDICTIONAL STATEMENT

The United States District Court for the District of New Jersey (the "District Court") has subject matter jurisdiction over this action (the "Action") pursuant to 28 U.S.C. § 1332(a). The United States Court of Appeals for the Third Circuit has jurisdiction to review the District Court's Opinion and Order (A3-A19;[1] the "Opinion and Order") granting Defendant Merck & Co., Inc.'s ("Merck") motion to dismiss (A58, *et seq.*; the "Motion to Dismiss") pursuant to 28 U.S.C. § 1291.

On May 23, 2025, the District Court issued the Opinion and Order granting Merck's Motion to Dismiss the Complaint (A25-45; the "Complaint") filed by Plaintiff Martin & Harris Private Limited ("M&H"). The District Court dismissed the Complaint without prejudice on *forum non conveniens* grounds.

A timely Notice of Appeal was filed on June 5, 2025. A1-2.

## ISSUES TO BE PRESENTED FOR REVIEW

Whether the District Court erred in resolving disputed factual issues against M&H without holding an evidentiary hearing despite substantial evidence submitted by M&H, including detailed declarations by the former Chief Justice of the High Court of Judicature at Bombay in India (the "Bombay High Court") and an economist and statistician who studies case lifecycles in the Indian court system, including the Bombay High Court. A3, A923-A1420.

---

[1] Citations to "A___" are to the Joint Appendix.

1

Whether the District Court erred in concluding, without a hearing, that India is an adequate alternative forum, M&H's choice of forum should be accorded less deference than typically accorded to plaintiffs, and public and private interest factors weigh in favor of dismissing the Action, therefore warranting dismissal of the Action on *forum non conveniens* grounds, where: (1) Merck is a New Jersey corporation whose United States-based personnel approved the decision to terminate a decades-old agreement that forms the basis of M&H's claims; (2) Merck did not meaningfully participate in, and actively withheld documents in, a parallel proceeding M&H brought against Merck and affiliated entities in India (the "India Action"); (3) the India Action has been stalled for fifteen years due to severe delays in the Bombay High Court, and due to the delays exacerbated by Merck's failure to participate or cooperate, including (i) the India Defendants (defined below) stalling by years filing their response to the complaint and their counterclaim, and (ii) suppressing key discovery, which M&H did not become aware of until it pursued discovery in the United States; (4) M&H served subpoenas on Merck pursuant to 28 U.S.C. § 1782 and discovered for the first time through documents and witnesses Merck produced in this forum Merck's key role in the termination of M&H's long term pharmaceutical distribution agreement (the "Agreement") between Organon and M&H whereby M&H served as an integrated channel partner to Organon (India) Limited, f/k/a Infar (India) Limited ("Organon"), which documents Merck certified

2

in the India Action it did not possess and thereby fraudulently concealed from the Bombay High Court as well as from M&H; (5) documents and witnesses relevant to the claims and defenses in this action are not concentrated in any particular forum but are scattered internationally, including in the United States; and (6) most of the relevant documents are located on servers available to parties and non-parties in the United States.  A6; A25-28, A37; A911-12, ¶¶ 5-8; A923, ¶ 2; A935, ¶ 23; A937, ¶ 32; A1143-44.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The following closed proceeding is related to this Action:

*In re Martin & Harris Private Limited*, Civil Action No. 20-17070 (D. N. J).

## STATEMENT OF THE CASE

The underlying dispute seeks damages for Merck's interference with M&H's contractual and future business with its long-time pharmaceuticals partner, Organon. ***Merck destroyed a seven-decade relationship between M&H and Organon*** by causing Organon to terminate the Agreement so that Merck could improperly secure for Organon and itself M&H's downstream distribution relationships, infrastructure, and distribution know-how that M&H had spent decades building for the companies' mutual benefit.  A28-36, ¶¶ 14-45.

3

## A.    Over Decades, M&H Helped Organon Develop a Successful Presence in India

The relationship between M&H and the promoter of Organon (Organon Laboratories U.K.) began somewhere in the 1930s and continued for approximately seven decades.  A26, ¶ 2.  In the 1930s, Organon, a non-Indian company at the time, appointed M&H as its exclusive importer, distributor, and market partner of its products in India.  A28, ¶ 14.  M&H was also the manufacturer for Organon Laboratories U.K., and thereafter for Organon, which would later cause M&H to transfer to Organon one manufacturing plant for a low price in recognition of the continuation of the partnership relationship.  The parties' agreement for the next five decades, which changed considerably over time, was never reduced to writing.  *Id.* In the 1950s and 1960s, because of import restrictions, M&H began importing raw materials and manufacturing products for Organon in Kolkata, India.  A29, ¶ 15. One of these products was very successful, and Organon and M&H agreed that Organon would establish a business unit within M&H for the exclusive purpose of selling and promoting Organon products in India.  *Id.*

In or about 1967, Organon incorporated an Indian affiliate to supply M&H with raw materials.  A29, ¶ 16.  M&H formulated the raw materials into pharmaceutical products and continued with its exclusive right of distribution in India for Organon.  *Id.*  M&H employees who had previously been dedicated to Organon products became employees of Organon's India affiliate, while M&H

4

continued to manufacture and distribute products for Organon through 1973. *Id.* After 1973, M&H continued to distribute Organon products throughout India using branch offices that M&H built and expanded because of the parties' arrangement and relationships M&H developed with down chain distributors (known as stockists). *Id.*, ¶ 17.

Prior to 1998, M&H was acting on behalf of Organon in dealing with third parties such as stockists' unions and government agencies, which required confirmation in the form of a written authorization stating that M&H was authorized to act on Organon's behalf and for the said purpose, Organon provided letters confirming M&H's authority. A29, ¶ 18.  In or about 1998, Organon and M&H agreed to record certain terms that could be used to satisfy those third parties, rather than the ad hoc practice of providing letters. *Id.*  Thus in 1998, M&H and Organon entered into a letter agreement which was amended by a 2001 letter agreement (collectively, the "Letter Agreement").  A29-30, ¶ 19.  The Letter Agreement was never intended to fully capture the parties' relationship, rights, or obligations. *Id.* Importantly, the Letter Agreement did not permit Organon to unilaterally terminate the parties' long-term arrangement, which was to continue so long as Organon continued to sell its products in India. *Id.*

M&H relied on its exclusive arrangement with Organon and Organon's agreement that the arrangement would continue so long as it sold products in India to reject other business.  A29-30, ¶ 19.

Throughout the decades, M&H invested substantial time, money, and resources based on its exclusive arrangement with Organon, including by: (a) establishing around 19 branch offices including warehousing facilities among other facilities across different states of India which have different local regulations, and making capital investments for infrastructure at those branch offices (including warehouse facilities), having Single Point Nationwide coverage thereby ensuring the seamless flow of processes and information across the branches while maintaining Good Storage Practices ("GSP"); (b) selecting, hiring, and training designated employees for the distribution of Organon's products across India from its branches; (c) assuming financial responsibility and ensuring that Organon received payment for all Organon products that were distributed by M&H; (d) agreeing to be responsible for compliance of sales tax, professional tax, octroi, weights and measures, and entry tax, handling certifications, notices forms and assessments therein and activities resulting from M&H selling Organon's products under M&H invoices; (e) managing inventory and returning unsold products to Organon based on custom and practice in the pharmaceutical industry including but not limited to segregating, processing, auditing, and settling the breakage and expiry claims

6

received from stockists and other customers for Organon's products distributed by M&H and arranging the disposal of expiry at all the branches; (f) obtaining and maintaining all licenses, permissions, and approvals, including approvals for launching new Organon products at all 19 branches with different regulations in each state, adapting to continuously changing local regulations and being flexible to open new M&H branch offices based upon Organon's business needs and as per various regulations and formation of new provinces for logistical efficiency; (g) maintaining and storing Organon's products in accordance with the rules and regulations governing the storage and distribution of pharmaceutical products in all branches according to different state laws (including EU Audit compliance for GSP); (h) appointing and developing a vast network of relationships with stockists throughout India to further distribute Organon's products to retailers, institutions, and hospitals throughout India whereas Organon had not succeeded in this area on its own; (i) developing and organizing cold-chain storage and desired logistics management to store and deliver Organon's temperature-sensitive products across India; (j) expeditiously collecting No Objection Certificates ("NOCs") and Letters of Consent ("LOCs") from all Indian states so that Organon's new products could be launched without delay; (k) allowing Organon's field staff to use M&H's premises for their weekly and monthly performance management meetings, review meetings, and for various other meetings; and (l) undertaking the risks and responsibility of financial

collections and goods, including but not limited to selection and shortlisting of lawyers, and filing and litigating legal recovery cases against, among others, stockists. M&H's resources, relationships, and experience handling logistics, distribution, and material management in India's complex market was a direct benefit to Organon.  A30-31, ¶ 22.

### B.    Schering Plough's Decision to Terminate M&H

In 1980, a subsidiary of Schering Plough (Merck's predecessor), purchased an entity known as Fulford to manufacture and distribute Schering Plough pharmaceutical products in India.  A32, ¶ 23.  In 2007, Schering Plough purchased Organon.  *Id.*, ¶ 24.  At that time, Schering Plough, which was organized under United States laws and headquartered in the United States, owned 98.4% of Organon and 54.3% of Fulford.  *Id.*

In 2008, Schering Plough began discussing the integration of Fulford and Organon.  *Id.*, ¶ 25.  K.G. Ananthakrishnan, who was at the time Fulford's Managing Director, became the head of Schering Plough's India operations, including Fulford and Organon.  *Id.*  At this time, Organon's entire management team was replaced with personnel appointed by Schering Plough.  *Id.*  In 2008, Organon's board of directors all resigned, and were replaced by Schering Plough employees or executives.  *Id.*

8

In 2008, almost immediately after the consummation of Schering Plough's acquisition of Organon and its replacement of Organon's board, Schering Plough decided to terminate the Agreement.  A32, ¶ 26.  On or about December 5, 2008, Schering Plough approved a Request for Concurrence ("RFC") to negotiate the termination of the Agreement.  *Id.*  The RFC approving the termination of M&H contemplated a team to negotiate with and compensate M&H in the amount of $1,875,556, and did not propose any alternatives to terminating M&H.  *Id.* However, Schering Plough never disclosed the RFC's existence to M&H, and a Schering Plough negotiating team never met with M&H to discuss it.  A33, ¶ 27. Schering Plough never disclosed to M&H its decision to terminate the Agreement at all. *Id.*

Despite Schering Plough's decision to terminate the Agreement, in 2009, it exclusively depended on M&H for executing Schering Plough's new Cardiovascular & Diabetic drug portfolio launch in India (the "CVD Portfolio") and did not choose any other clearing and forwarding agent[2] or distribution agent except M&H which was Organon's long-term distribution partner.  A33, ¶ 29.  Organon did not have the required supply chain, stockist relationships and data, technical infrastructure, or experience to launch the CVD Portfolio in a diverse market like India without

---

[2] A clearing and forwarding agent receives goods from a company and dispatches them to the stockists and wholesalers.

M&H's assistance. *Id.* Based on M&H and Organon's long-standing Agreement, M&H obtained NOCs and LOCs from states across India to aid Schering Plough's CVD Portfolio launch. *Id.* Schering Plough did not disclose to M&H its decision to terminate M&H's Agreement with Organon during this time to avoid jeopardizing the CVD Portfolio launch. *Id.*

### C.    <u>Merck's Decision to Terminate M&H</u>

On November 3, 2009, Schering Plough merged with Merck, and the surviving entity was named Merck. A33-34, ¶ 30. From November 2009—when Merck merged with Schering Plough—to later in 2010, M&H, at Organon's request, continued to invest in upgrading its facilities to distribute Organon's products despite being unaware that its Agreement with Organon was about to be unlawfully terminated. If M&H had been aware of the forthcoming termination, it would not have invested in upgrading its facilities. *Id.*, ¶ 33. These upgrades were necessary to help Organon distribute new CVD Portfolio products, as well as its new contraceptive product, Nuvaring, in India. *Id.*

Merck then engaged a consultant, McKinsey & Company ("McKinsey"), to conduct a sham analysis to justify and provide cover for the decision to terminate the Agreement, which decision had already been made a year prior. A27, ¶ 5; A37-38, ¶ 49; A41, ¶ 69. In February 2010, Merck determined it would implement Schering Plough's plan, made more than a year earlier via the RFC, to terminate the

Agreement. A34, ¶ 34. Merck did not immediately disclose this to M&H. *Id.*, ¶ 35. Instead, between the time that Merck decided to terminate M&H and the time Merck notified M&H of the decision, Merck covertly met with M&H's thousands of stockists throughout India (under the guise of audits of M&H's branches) for the purpose of usurping M&H's channels of distribution, supply-chain infrastructure, management and operating procedures, and to secure the stockists' continued services for Merck after it ended the Agreement. A30-31, ¶ 22; A41 ¶ 69. M&H had spent decades building these relationships, as well as its nationwide infrastructure to distribute products for Organon. A41, ¶ 69.

In July and August 2010, Mr. Ananthakrishnan, who became the head of Organon after the Schering Plough/Merck merger, notified M&H of the decision to terminate the Agreement. A35, ¶ 36-37. At that time, Mr. Ananthakrishnan never raised any issues related to M&H's performance or disclosed any analysis Schering Plough or Merck had conducted. *Id.*, ¶ 36. He instead told M&H that the Agreement needed to be terminated to align Organon's distribution in India with Merck's global policies and practices. *Id.* This was false because Merck did not have any relevant global policies and practices and moreover Merck did not produce any documents in support thereof in the India Action. A36, ¶ 42. M&H offered to adopt a distribution model which would conform to and accommodate the purported Merck global policy and maintain its decades-long relationship with Organon. A35-36, ¶

11

40.  Organon did not consider this offer, and instead deemed the Agreement terminated.  *Id.*

### D.    <u>The India Action</u>

Within months, on November 8, 2010, M&H commenced the India Action for breach of contract against Organon, Organon Participations B.V., and Merck (the "India Defendants"), in the Bombay High Court, seeking approximately $346 million in damages resulting from the unlawful termination of the Agreement on the basis of Merck's alleged "global policy."  A36-37, ¶ 46.

The India Action was, at all material times, defended by the India Defendants through Organon only, which acted on behalf of the other India Defendants including Merck, by filing a common Written Statement (akin to an answer to a complaint) affirmed by the representative of Organon identifying the same false explanation they had earlier provided to M&H: "As a result of the acquisition of the controlling interest of [Organon] by [Merck], the policies and processes of [Organon] also underwent a change to bring about uniformity with [Merck's] global commercial policies and processes."  A35, ¶ 39.

Since its inception in 2010, Merck never actively participated in the India Action.  A37, ¶ 48.  It has not produced any documents[3] and in February 2015 ***falsely***

---

[3] Indian courts typically do not force or otherwise compel a party to produce the responsive or relevant material they have in their possession.  A935, ¶ 25; A937, ¶ 32 (Decl. of Justice Singh ("Singh Decl.")) ("Indian Courts' power to compel the

*certified in an Affidavit of Documents ("AOD") that it produced all the documents*

*relating to the India Action.*    A935, ¶ 23; A937, ¶ 32 (Singh Decl.).  The AOD,

submitted by the India Defendants, stated:

> [T]he defendants have not now and never had in its possession . . . any
> deed account, book of account, voucher, receipt, letter, memorandum,
> paper or writing or any, copy of or any extract from any such document
> of any other documents whatsoever, relating to the matters in question
> in this suit or any of them, other than and except the documents set forth
> in the first schedule hereto.

A332-33, ¶ 3 (AOD of K.G. Ananthakrishnan, sworn to February 12, 2015).  Most

importantly to the present appeal, and as further explained below, *the falsity of*

*Merck's certification was first discovered during the 1782 Proceeding*, as Merck

*did not produce many key documents, including the RFC, in the India Action*.

A37-38, ¶¶ 48-49.

    Although the India Action was filed in 2010 in good faith, it has been largely

stalled since 2015 and still not reached trial.[4]  Fifteen years after M&H commenced

_____

production of documents and foreign witnesses is limited and rarely exercised.").
Therefore, the Bombay High Court was not a viable avenue through which M&H
could obtain discovery from Merck.

[4] After M&H filed its complaint in 2010, it took four years for the India Defendants
to file its written response, seek leave to assert counterclaims, and for the Bombay
High Court to allow the belated counterclaim.  *See* A929-34, ¶ 22.  After 2015, the
Bombay High Court did not take the case up for a substantive hearing between 2015
and 2023.  A929, ¶ 22; A936, ¶ 28, A939, ¶ 41.  In 2023, the case finally came to
bar, and M&H sought a few short adjournments to conclude the 1782 Proceeding.
A936, ¶ 28; A937 ¶ 30.  M&H has been prepared to present its case in evidence in
chief since 2015.  A938, ¶ 35 (Singh Decl.).  However, because no party was seeking

the India Action, the India Action is nowhere near resolution and there is nothing

M&H can do to move the case forward.  Trial has not yet been scheduled, and it is

unknown how much longer it will take before trial commences.  A924, ¶ 4; A938,

¶¶ 35-36 (Singh Decl.).

Due to the Bombay High Court's backlog, even in commercial cases, it is

likely that the India Action will not be resolved (including exhaustion of appeals)

for at least another 30-35 years.  A38-39, ¶ 50; A943-44, ¶¶ 52-58, 60 (Singh Decl.).

### E.    The 1782 Proceeding

Because Merck never disclosed many key documents to M&H in the India

Action, including the RFC and any other documents pertaining to its alleged global

policy, on November 24, 2020, M&H commenced a special proceeding in the

District Court for the District of New Jersey, Case No. 2:20-17070 (the "1782

Proceeding").  A37, ¶ 48.  The 1782 Proceeding authorized M&H to serve Merck

with a document and deposition subpoena.  A911-12, ¶¶ 5, 8 (Decl. of Adam Safer

("Safer Decl.")); A449-50, ¶¶ 47-49 (Aff. of Bharat Sharma).

In the 1782 Proceeding, Merck produced approximately 2,453 electronic

English-language documents.  A911, ¶ 5 (Safer Decl.).

---

urgent interim relief in the India Action, it is left to the court, not the parties, to
schedule hearings.  *Id.* ¶¶ 31, 34, 36-37, 39.

Through the 1782 proceedings, M&H came to learn of facts and documents for the first time showing Merck's active interference and responsibility in bringing about the unlawful termination of the long-term Agreement, giving rise to distinct and new causes of action in favor of M&H to file the Complaint against Merck in the District Court.  A33-38, ¶¶ 30-45, 49; *see* A935, ¶ 23, A937, ¶ 32 (Singh Decl.). For example, the discovery obtained in the 1782 Proceeding revealed the following facts for the first time, which were unknown to M&H:

a.  There was no Merck global policy with respect to distribution as stated by the India Defendants in the India Action;

b.  It was Schering Plough and Merck, relying on Fulford-friendly personnel, that directly caused Organon to terminate its decades-long relationship with M&H, while simultaneously taking advantage of M&H and its relationships and infrastructure to bolster their new products;

c.  Schering Plough began the process of terminating Organon's relationship with M&H in 2007 and continued to plan the termination through 2008;

d.  Schering Plough's motives behind planning to terminate Organon's relationship with M&H were to implement Fulford's distribution model for Organon products;

e.  Schering Plough was aware that the Letter Agreement did not contain a termination clause, and that a negotiated resolution would be required;

f.  Schering Plough nonetheless planned to terminate the Agreement, which plan was approved by Schering Plough management in an RFC approved in 2008;

g.  Around the time of the Schering Plough/Merck merger, Schering Plough employees and management discussed the plan to terminate M&H with incoming Merck employees and management;

15

h.    Upon completion of the Schering Plough/Merck merger, Merck
      steadfastly continued with the plan to terminate Organon's long-term
      relationship with M&H and replace M&H's consignment agent
      services with Fulford's Clearing & Forwarding Agent Model for
      distributing Organon products throughout India;

i.    Merck engaged McKinsey to aid the process of papering a rationale for
      the decision which had already been made to terminate M&H; and

j.    Merck arrived at a final determination to terminate M&H in February
      2010, but neither Merck nor Organon discussed with M&H the
      determination for months, while M&H continued to perform services
      for Organon under the impression that their relationship would continue
      into the future.

A37-38, ¶ 49.  With an institutional bias toward the Fulford model, Schering Plough

decided to terminate Organon's agreement with M&H.  A26, ¶ 3.  Merck and

Organon are guilty of suppressing and withholding these facts and documents in the

India Action, and of falsely stating in the AOD that they did not possess the said

documents.  A332-33, ¶ 3.

During the 1782 Proceeding, M&H also first learned of the RFC that approved

the decision to terminate M&H and that the relevant decision-makers and key figures

in the decision to terminate the Agreement were located in the United States or

internationally, outside of India.  A911-12, ¶¶ 7-9 (Safer Decl.).  The individuals

who approved the RFC—key witnesses in this action—were never deposed because

they were not employed by Merck at the time of the 1782 Proceeding, and thus

Merck could not be required to make them available for testimony. A912, ¶ 8.[5]

Thus, M&H did not have full access to relevant testimony from Merck during the

1782 Proceeding.

One of the three witnesses Merck did make available was T.C. Chua.

However, despite its legal hold obligations (based on the service of a subpoena in

connection with the 1782 Proceeding), on June 1, 2021 (six months after the

subpoena was served), Merck destroyed all of Mr. Chua's emails. A450-51, ¶ 50.

There are other non-parties with relevant information, including without

limitation, McKinsey, and former employees of Merck, Schering Plough, and

McKinsey.

### F.    <u>The Present Action</u>

From the documents discovered in the 1782 Proceeding, M&H learned for the

first time of the facts showing Merck's active interference in bringing about the

termination of the long-term Agreement by its subsidiary in India. Hence, on

December 29, 2023, M&H filed the Complaint in the District Court against Merck

for tortious interference with contract, tortious interference with prospective

---

[5] Those individuals are Chandrahas Kutty, KG Ananthakrishnan, Kathryn Mathias, Rohan Abayasekara, Grant Reed, Rodney Unsworth, Charles Schultes, and Carrie Cox. A911, ¶ 7 (Safer Decl.).

business relation and unjust enrichment, which are distinct causes of action from the breach of contract claim in the India Action.

In a strategic effort to avoid litigation that, unlike the India Action, will proceed at a reasonable pace, on March 11, 2024, Merck filed its Motion to Dismiss, arguing, among other things, that the Complaint should be dismissed on grounds of *forum non conveniens*.  A3.  M&H opposed Merck's Motion to Dismiss.  *Id*.  On May 23, 2025, the District Court issued the Opinion and Order granting Merck's Motion to Dismiss and dismissed the Complaint without prejudice based on *forum non conveniens*.  A3-19.

On June 5, 2025, M&H timely filed a Notice of Appeal.  A1-2.

## <u>STANDARD OF REVIEW</u>

Although this Court's review of a decision to dismiss for *forum non conveniens* is generally limited to whether there has been an abuse of discretion, a court of appeals must reverse "when [the district court] fails to consider adequately . . . the amount of deference due the foreign plaintiff's choice of forum or when it clearly errs in weighing the factors to be considered [in the *forum non conveniens* analysis]."  *Tech. Dev. Co. v. Onischenko*, 174 F. App'x 117, 119 (3d Cir. 2006) ("*Onischenko I*") (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 631–32 (3d Cir.1989)).

A reversible abuse of discretion also occurs when the District Court fails to hold the movant to its burden of persuasion as to all elements of the *forum non conveniens* analysis. *Onischenko I*, 174 F. App'x at 122-23.

## SUMMARY OF ARGUMENT

To prevail on its Motion to Dismiss, Merck had to overcome the deference owed to M&H's choice of forum; establish through evidence that the private and public interest factors tip ***decidedly*** in favor of dismissal; and show that India is an adequate alternative forum. Dismissal, however, is not appropriate just because private and public interest factors do not favor retaining jurisdiction. Instead, the defendant must prove through evidence rather than speculation that the plaintiff's choice of forum is "vexatious and oppressive" to the defendant out of all proportion to the plaintiff's convenience.

Here, the District Court erred in concluding that the *forum non conveniens* analysis favored dismissal of the Action.

*First*, the District Court erred in resolving disputed factual issues against M&H without holding an evidentiary hearing despite substantial evidence submitted by M&H, including detailed declarations by the former judge of the Honorable Supreme Court of India and Chief Justice of the Bombay High Court and an economist and statistician who studies case lifecycles in the Indian court system, including the Bombay High Court. *See* Point I.A, *infra*.

19

*Second*, the District Court's decision to accord M&H's chosen forum reduced deference was error. Initially, the District Court erred in holding that M&H is entitled to reduced deference because M&H did not make a "strong showing" that this forum is convenient. The record demonstrates that the Bombay High Court is a highly inconvenient forum for litigating cross-national disputes. M&H submitted ample evidence showing that M&H invoked the authority of ***this*** forum precisely for convenience: after years of stalled litigation in India, M&H was finally able to make headway by obtaining discovery in this forum, where the District Court has the power to compel Merck's participation (a power which in Indian is very limited and highly time consuming). The facts showing Merck's responsibility for the Agreement's demise were first discovered when Merck produced documents and deposition witnesses in the 1782 Proceeding, which documents Merck actively withheld from the Bombay High Court. The record demonstrates that M&H unequivocally made a "strong showing" of convenience for why it chose this forum, including that it was driven to this forum by Merck's deceptive actions in the alternative forum.

The District Court also erred by holding that M&H was entitled to reduced deference because "the case has 'little or no connection'" to the chosen forum. This Action has direct connections to this forum because key witnesses involved in the decision to terminate the Agreement reside in the United States. A911, ¶ 7 (Safer Decl.). Courts have held that a plaintiff's choice to sue a defendant in its own forum

20

is itself demonstrative of convenience. Therefore, M&H's decision to sue Merck in its home state where key decision-making occurred was entitled to significant deference. *See* Point I.B, *infra*.

*Third*, the District Court erred in concluding that the private and public interest factors favored dismissal. Even where reduced deference is accorded to a plaintiff's choice of forum, it remains Merck's burden to prove through evidence that M&H's chosen forum creates "oppressiveness and vexation" for Merck and the private and public interest factors ***strongly*** outweigh plaintiff's choice. The District Court failed to make a finding that litigation in this forum would be vexatious and oppressive to Merck or how that inconvenience manifested. Not only did Merck fail to meet its heavy burden, but the District Court essentially flipped the burden of proof on M&H, which this Court has held is improper. *See Onischenko I*, 174 F. App'x at 123 (vacating dismissal because "[t]he District Court abused its discretion by failing to address properly the Supreme Court's and this Court's *forum non conveniens* jurisprudence").

Additionally, while the District Court held that dismissal was appropriate because a majority of the documents produced in the 1782 Proceeding were from custodians located in India, it overlooked that the custodians identified in the 1782 Proceeding did not include the signatories to the RFC which Merck only produced in the 1782 Proceeding. Further, the District Court erred in focusing almost

exclusively on the location of the documentary evidence, which many courts around the country have held is no longer an important factor in the *forum non conveniens* analysis given advances in technology.

The District Court also entirely failed to consider that procedurally and practically, documentary evidence is far easier to access in New Jersey than in India as demonstrated by the procedural history of this case. Further, most witnesses are in the United States or are located internationally outside of India. Therefore, in terms of location of documents and witnesses, litigating in this forum is no more oppressive to Merck than would be litigating in India. Finally, the District Court insufficiently considered in its analysis of public interest factors the severe delays in Indian courts, and that New Jersey residents have an interest in resolving a dispute against a New Jersey corporation that took certain actions complained of in this very state. *See* Point I.C, *infra*.

*Fourth***,** the District Court erred by holding that India is an adequate alternative forum. The Supreme Court of India itself has recognized that justice in the Indian courts is subject to "interminable delays."[6] That court's observation is supported by substantial evidence submitted to the District Court by M&H, including that the

---

[6] *See Yashpal Jain v. Sushila Devi and Ors.*, 2023/INSC/948.

India Action itself has proceeded for fifteen years with no resolution in sight. *See* Point I.D, *infra*.

The true explanation for why Merck seeks to dismiss this Action from its home state can be found in its *modus operandi* of the last fifteen years: seeking to ensure that M&H cannot obtain relief in *any* jurisdiction in the world. The Second Circuit has acknowledged such situations and warned district courts of defendants with improper motives:

> Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001). Here, Merck's goal is to return the case to the jurisdiction where it can continue not to participate in the litigation and where the court does not have power to compel Merck's participation.

It is far more convenient for Merck to contest this action in this forum, but it is constantly fighting to confine M&H's claims to the Indian courts. M&H was constrained to file the present action in New Jersey—a forum half-way across the world to M&H, but Merck's home forum—because M&H has been unable to obtain any level of redress in India due to systemic failures of the Indian courts and Merck taking advantage of those failures. Merck's determination to not try this case in its

23

home forum is more specious given the level of convenience this forum affords Merck, and because decisions pertaining to the unlawful termination of the Agreement were made in the United States.   There should be no reason— convenience or otherwise—to prohibit M&H from trying its claims against Merck in its home forum for its actions and decisions made in this country.

If this Court fails to reverse the Opinion and Order of the District Court, M&H, a small Indian company, would be denied justice against the unlawful and illegal actions of Merck, a global pharmaceutical giant based in New Jersey.

For these reasons, this Court should reverse the Opinion and Order, reinstate M&H's Complaint, and remand for further proceedings consistent with the decision of this Court.

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT BASED ON *FORUM NON CONVENIENS***

"[D]ismissal for forum non conveniens is the exception rather than the rule" and is appropriate ***only*** if the defendant meets its burden to establish that proceeding in the plaintiff's chosen forum would cause it "oppressiveness and vexation . . . out of all proportion to the plaintiff's convenience[.]"  *Onischenko I*, 174 F. App'x at 119; *see Lony*, 886 F.2d at 640 (same); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42, 46 (3d Cir. 1988) (same); *see also Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 953 (D.C. Cir. 2019) (same).

To prevail on its motion, a defendant must overcome the deference owed to the plaintiff's choice of forum; show that the private and public interest factors "tip[] **decidedly** in favor of trial in the foreign forum"; and show that an adequate alternative forum exists. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991); *see Onischenko I*, 174 F. App'x at 119-20. The defendant "bears the burden of persuasion as to the elements[.]" *Onischenko I*, 174 F. App'x at 119.

In *Onischenko I*, the Third Circuit vacated a District Court's dismissal based on *forum non conveniens* for failing to properly distribute this burden. *Id.* at 122. The Third Circuit explained the District Court's error as follows:

> Here, [the District Court's decision must be vacated because] it is unclear whether the District Court concluded that litigation in New Jersey was vexatious and oppressive to [defendant] out of all proportion to [plaintiff's] convenience, or whether, all things being equal, Russia was a better forum. The former is a basis for dismissal; the latter is not.
>
> The District Court concluded its private interest analysis by stating that "I think I have given a sufficient recitation to show that there are no private factors and certainly no interest of this forum factors that favor retaining jurisdiction in this forum."
>
> The problem is that dismissal is not appropriate just because the private and public factors do not favor *retaining* jurisdiction. . . . [Instead, the defendant] bears the burden of establishing that litigation in New Jersey would be oppressive and vexatious to him.

*Onischenko I*, 174 F. App'x at 123 (emphasis in original); *see Dibble v. Torax Med., Inc.*, 2025 WL 2250561, at *3 (8th Cir. Aug. 7, 2025) (reversing dismissal of foreign plaintiff's claims where "[the] district court abused its discretion by failing to hold

Defendants to their proper burden of persuasion on all elements of the analysis");
*Curtis v. Galakatos*, 19 F.4th 41, 57 (1st Cir. 2021) (reversing dismissal where "[the] district court abused its discretion in failing to hold [defendant] to his burden"); *see also Ma v. Li*, 2022 WL 1165623, at *3 (D.N.J. Apr. 20, 2022) (denying defendants' motion to dismiss based on *forum non conveniens*).

"As a general rule, a motion for dismissal due to *forum non conveniens* should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a ***record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff***." *Armada v. Kuzovkin*, 2021 WL 4026177, at *4-5 (N.J. Super. Ct. App. Div. Sept. 3, 2021) (emphasis added) (reversing and remanding for discovery court's "premature" *forum non conveniens* dismissal); *see Lacey*, 932 F.2d at 49 (reversing *forum non conveniens* dismissal where "defendants did not submit adequate information of record to facilitate the forum non conveniens analysis"); *Nieminen v. Breeze-E., a Div. of Transtechnology Corp.*, 736 F. Supp. 580, 583 (D.N.J. 1990) (denying motion to dismiss on *forum non conveniens* grounds where defendant failed to present evidence in record regarding alternative forum).

Here, the District Court abused its discretion in granting Merck's Motion to Dismiss because Merck failed to meet its burden of persuasion that the *forum non conveniens* analysis weighed heavily in favor of dismissal.

26

**A.**     **The District Court Erred in Deciding Material Factual Disputes Against M&H Without Giving M&H an Opportunity to Be Heard**

The District Court erred in making factual determinations against M&H in the face of competing evidence and crediting Merck's expert and evidence over M&H's experts and evidence without giving M&H an opportunity to be heard. *See generally Tedesco Mfg. Co. v. Honeywell Int'l Inc.*, 371 F. App'x 316, 324 (3d Cir. 2010) (vacating in part district court's judgment and remanding for evidentiary hearing where court decided material disputes of fact without hearing); *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993) ("where facts are disputed and the credibility of explanations for some of them is at issue, the district court should have conducted an evidentiary hearing"; reversing and remanding for evidentiary hearing); *see also Biopharma v. Inhibrx, Inc.*, 2022 WL 22905024, at *5 (D. Del. Oct. 25, 2022) (holding in abeyance *forum non conveniens* motion pending evidentiary hearing; concluding "the Court . . . must hold an evidentiary hearing" where there was key factual dispute between parties).

District courts in this Circuit regularly hold evidentiary hearings before deciding motions to dismiss on grounds of *forum non conveniens*. *See, e.g., Onischenko I,* 174 F. App'x at 121*; Lony*, 935 F.2d at 613; *Charles v. QVC, Inc.*, 2025 WL 1648432, at *6 (E.D. Pa. June 10, 2025); *Ryanair DAC v. Booking Holdings Inc.*, 2021 WL 7209367, at *4 (D. Del. Dec. 27, 2021); *M&B IP Analysts, LLC v. Cortica-US, Inc.*, 2020 WL 3411027, at *1 (D.N.J. June 22, 2020); *Trout v.*

*Marriott Int'l, Inc.*, 2019 WL 13248861, at *2 (D.N.J. June 24, 2019); *Men of Steel Rebar Fabricators, LLC v. Collavino Corp.*, 2017 WL 2981231, at *1 (D.N.J. June 20, 2017), report and recommendation adopted, 2017 WL 2979681 (D.N.J. July 11, 2017); *OKS Grp., LLC v. Axtria Inc.*, 2015 WL 9694786, at *1 (D.N.J. Dec. 15, 2015), report and recommendation adopted, 2016 WL 154085 (D.N.J. Jan. 11, 2016); *Howden N. Am. Inc. v. Ace Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478, 484 (W.D. Pa. 2012); *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 516 (D.N.J. 2007) ("*Onischenko II*"); *Fiscus v. Combus Fin. AG*, 2006 WL 1722607, at *3 (D.N.J. June 20, 2006); *Specialty Assistance Claim Servs., Inc. v. Colin Luke Assocs., Ltd.,* 2004 WL 2988516, at *9 (E.D. Pa. Dec. 27, 2004).

Here, the District Court erroneously made numerous factual determinations against M&H and discredited M&H's expert declarations without conducting a hearing.  A3.

The District Court held that M&H's choice of forum is entitled to reduced deference in part because the case has "little or no connection" to this forum.  A13-14.  However, the District Court discredited evidence that decisions relevant to M&H's claims were made by key individuals residing in the United States.  A911, ¶ 7 (Safer Decl.).  For example, three of eight individuals who approved the RFC and would be key witnesses in this Action reside in the United States: Carrie Cox

(currently the Chairman of Organon & Co.), Kathryn Mathias (who commented on the RFC), and Charles Schultes.  A911, ¶ 7 (Safer Decl.); A921 (RFC).

Next, the District Court held that Indian courts are not backlogged, in part, because M&H's expert declaration stated that 40% of commercial cases are decided in six years or less.  A9.  However, the District Court's conclusion based on the evidence submitted to it was specious.  The District Court overlooked that more than half of these cases were disposed of other than by trial, such as by withdrawal by the parties or settlement, therefore materially inflating the resolution figure by making an apples-to-oranges comparison.  A1188, ¶ 3.3.  M&H's expert submitted data that showed that only *16%* of the cases filed in 2017 were disposed of by trial, a statistic the Court entirely ignored in its analysis.  *Id.*  Further, the court discredited the expert opinion of Mr. Bisheshwar Prasad Singh, Former Chief Justice of Hon'ble Bombay High Court, ("Justice Singh") that the India Action will take 30-35 years to resolve through the appeal process as unsupported and "belied by the data."  A9.  But there was no data – and the Court pointed to none – that contradicted Justice Singh's expert opinion.  The Court's acceptance of Merck's argument over Justice Singh's opinion was improper.  *See generally Luxliner P.L. Exp., Co.*, 13 F.3d at 72 ("When competing sworn affidavits may result in one or more genuine issues of material fact, due process requires that a district court judge hear the evidence to assess for him or herself the credibility, or lack thereof, of one side as opposed to the other.").

29

The District Court also credited Merck's factual assertion that M&H was at least partially at fault for delays in the India Action, notwithstanding that the delays were exacerbated by Merck's failure to cooperate and participate. A10.  The District Court relied on the Bombay High Court's non-binding January 22, 2024, observation and Merck's claims regarding the effect of same, and concluded that M&H did not provide good reason to doubt the observation's accuracy despite expert testimony from M&H stating that the unusual observation was issued by a bench which was unfamiliar with the peculiar facts and circumstances of the lengthy case, including the suppression of key documents which came to light for the first time in the 1782 Proceedings which compelled M&H to file a Complaint in the District Court.  A10-11.

The District Court also credited Merck's claims that M&H's non-filing of an Evidence Affidavit in response to an Indian court order caused delay in the India Action.  A10-11; A68-69, ¶¶ 26-29 (Decl. of Sharan Jagtiani).  However, M&H submitted expert testimony stating that the non-filing of an Evidence Affidavit had no impact on the time it would take to resolve the India Action because the Bombay High Court did not "list" the case between December 2015 and February 2013. A928-29, A936, ¶¶ 17-19, 28.  Furthermore, M&H's expert explained that the parties must wait for the Bombay High Court to "list" a matter for it to proceed, and there

is no procedure except in cases of "extreme urgency" (for circumstances not present in the India Action) that allows a party to list the matter.  A929, ¶ 19.

Finally, the District Court held that the Bombay High Court was not an inadequate alternative forum due to its discovery rules where M&H appeared not to have sought discovery in the India Action.  A11-12.  But the District Court improperly discredited the evidence submitted by M&H showing (1) that the India Defendants filed a document with the Indian Court stating that all relevant documents had been produced, which proved to be untrue because Merck later produced key documents concerning the India Action for the first time in the 1782 Proceeding, and (2) that India courts do not typically compel a party to produce responsive documents.  A12; A332-33, ¶ 3; A935, ¶ 23; A935, A937, ¶¶ 25, 32 (Singh Decl.).

By deciding material disputes of fact against M&H without holding a hearing, especially where the result was the dismissal of M&H's Complaint in its entirety,[7] the District Court abused its discretion.

---

[7] *See Dow Chemical Co. v.  Castro Alfaro,* 786 S.W.2d 674, 683 (Tex. 1990) ("A *forum non conveniens* dismissal is often, in reality, a complete victory for the defendant.").

31

**B.** **The District Court Erred in According Insufficient Deference to M&H That Courts Regularly Accord to a Plaintiff's Choice of Forum**

The plaintiff's choice of forum "should rarely be disturbed[.]" *Lony*, 886 F.2d at 632 (citing *Lacey*, 862 F.2d at 42-46) (recognizing that even in cases involving a foreign plaintiff, "dismissal for forum non conveniens is the exception rather than the rule"). Absent evidence that a plaintiff's choice of forum was for the improper purpose of vexing, harassing, or oppressing the defendant, courts give significant deference to a foreign plaintiff's choice of forum. *See Onischenko II,* 536 F. Supp. 2d at 520 ("[the foreign plaintiff's] choice of forum is entitled to significant deference . . . because of the evidence demonstrating that its decision was motivated by convenience" and not "to vex, harass, or oppress" the domestic defendant); *Nieminen*, 736 F. Supp. at 584 (according "substantial (full) deference" to foreign plaintiff's choice of forum where it was based on convenience) (parenthetical in original).

A foreign plaintiff's choice to sue a defendant in its home forum "has considerable weight in showing that the plaintiff[']s choice was based on convenience." *Lony*, 886 F.2d at 634; *see Onischenko I*, 174 F. App'x at 120–22 (same).

Here, the District Court's decision to accord M&H's chosen forum reduced deference was error in two respects. A6, A14-15.

The District Court erred in concluding that M&H did not make a "strong showing" that this forum is convenient. A13. M&H invoked the authority of the District Court in part because of M&H's experience of tremendous inconvenience litigating in the Bombay High Court where Merck has not meaningfully participated and where litigation has been stalled for fifteen years although it was filed in 2010 in good faith. A923, ¶ 2; ¶ 54; A935, ¶ 23; A937, ¶ 32 (Singh Decl.); A332-33, ¶ 3.

M&H submitted substantial evidence to the District Court showing that, in contrast to litigating in India, M&H was finally able to make headway in moving its case forward and obtaining discovery through the District Court in Merck's home state, where the District Court has the power to compel Merck's participation (a power which is very limited in the Indian forum). A935-36, ¶¶ 25-27. M&H's choice of forum is therefore based on convenience and entitled to significant deference. *See Onischenko I*, 174 F. App'x at 122 (vacating *foreign non conveniens* dismissal involving foreign plaintiff; instructing courts must consider deference owed to foreign plaintiff where there is "evidence of convenience (even if [the evidence] is not in the form of the foreign plaintiff's direct contacts to the forum)").

The District Court also erred by holding that "the case has 'little or no connection'" to the chosen forum. A13-14. M&H submitted evidence that this Action has direct contacts to this forum because key decisions leading up to the

termination of the Agreement alleged in the Complaint occurred in the United States. A911, ¶ 7 (Safer Decl.).

M&H's demonstration that its choice of forum is based on convenience and convenience alone, its decision to sue Merck in its home state where key decision-making occurred, and Merck's failure to demonstrate why its home state is an inconvenient forum, compel the conclusion that M&H's choice of forum was entitled to significant deference. The District Court's failure to accord M&H this significant deference is reversible error.

### C.    The District Court Erred in Concluding That Private and Public Interest Factors Weigh in Favor of Dismissal

"[E]ven where the Court affords less deference to the foreign plaintiff[] . . . it remains the defendant's burden to show *by a strong preponderance* the convenience of the alternative forum." *Onischenko II*, 536 F. Supp. 2d at 521 (citing *Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997)) (emphasis added) (denying motion to dismiss where "plaintiff's inconvenience to litigate abroad" was "at most . . . roughly equal to the defendant's inconvenience to litigate in New Jersey").

To prevail on its Motion to Dismiss, Merck was required to show "that the private and public interest factors weigh *heavily* on the side of dismissal." *Lacey*, 862 F.2d at 44 (emphasis added). "If . . . the relevant private and public factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Lacey*, 932 F.2d at 180; *see Lony*, 886 F.2d at 635.

34

Furthermore "dismissal is not appropriate just because the private and public factors do not favor *retaining* jurisdiction. . . . [Instead, Merck] bears the burden of establishing that litigation in New Jersey would be oppressive and vexatious to [it]." *Onischenko I*, 174 F. App'x at 123 (emphasis in original).

Here, the District Court erred by holding that the private and public interest factors weighed in favor of dismissal. The District Court failed to appreciate that Merck withheld documents in the India Action which documents were used as the basis for the termination of the Agreement, filed an affidavit falsely stating that they did not have any more documents to produce, and in fact produced those documents, for the very first time, in the 1782 Proceeding, giving rise to claims against Merck distinct from those in the India Action.

### 1.    Private Interest Factors Do Not Weigh Decidedly in Favor of Proceeding in India

Private interest factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining willing witnesses; and practical considerations that make trial of a case easy, expeditious, and inexpensive. *Onischenko II*, 536 F. Supp. 2d at 518, 522 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). As with other *forum non conveniens* elements, it was Merck's burden to establish that Merck would have far superior access to sources of proof in India than in this forum. But Merck did not and cannot meet its burden because the evidence presented to the District Court

clearly showed the opposite: access to sources of proof is far greater in this forum than in India.

As the starting point from which this Court should assess Merck's claim of inconvenience, the record demonstrates that Merck has faced absolutely no inconvenience in participating in discovery in this forum. Merck electronically produced thousands of documents in the 1782 Proceeding without order and produced three foreign witnesses, none of whom were in India, for remote depositions without issues of access or translation. A908, ¶¶ 3-4 (Decl. of Lisa C. Dykstra) ("The depositions [of the witnesses from Singapore and Australia] were conducted remotely.").[8] Specifically,

> Merck produced approximately 2,453 documents, all of which were electronic [.] . . . Merck did not produce any hard-copy documents which had to be retrieved from India or any other location. All Merck's documents were produced in English. To my knowledge, no documents were translated . . . .

> None of the three witnesses who were deposed in connection with the 1782 Proceeding resided in India. Two resided in Singapore and one resided in Australia. Merck produced all three witnesses for remote depositions without issues of access or translation.

---

[8] *See Ma*, 2022 WL 1165623, at *4 (denying motion to dismiss; "[d]efendants also contend that Plaintiff and all witnesses speak Mandarin" and "all records relating to the case . . . are in China. . . . This factor does not strongly weigh in favor of dismissal because Defendants have not submitted any evidence that the parties would not be able to secure necessary interpreting and translation services . . . to adequately litigate their disputes in this Court[.]").

A911-12, ¶¶ 5, 8 (Safer Decl.).  Merck has offered no evidence why producing these witnesses or documents in India would have been more convenient to it.

Fewer than half of the eleven custodians of the documents produced in the 1782 Proceeding were based in India, while more than half were based in the United States or outside of India.  *See* A912, ¶ 9 (Safer Decl.).  And *none* of the three individuals that M&H deposed in the 1782 Proceeding was based in India.  A908, ¶¶ 3-4 (Safer Decl.).  Under these circumstances, the District Court's holding that private interest factors weighed in favor of dismissal was an abuse of discretion.  *See Dibble*, 2025 WL 2250561 at *4 (reversing dismissal; "***district court's analysis was flawed because it automatically weighed all contacts outside Minnesota in favor of [litigating in] the United Kingdom***") (emphasis added); *Skycliff IT, LLC v. N.S. Infotech Ltd.*, 2018 WL 2332219, at *7 (D.N.J. May 23, 2018) (private interest factors weighed in favor of plaintiff where "relevant witnesses appear to reside in both countries"); *Burke*, 969 F. Supp. at 930 (private interest factors weighed in favor of retaining action where "[s]ources of proof and potential witnesses exist[ed] both in this country and in [alternative forum]"); *Onischenko II*, 536 F. Supp. 2d at 521 (private interest factors weighed in favor of plaintiff where three potential witnesses lived neither in the United States nor in the alternative forum, but in a third country); *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, 2014 WL 4724625,

at *6 (D.N.J. Sept. 23, 2014) (denying motion to dismiss where witnesses identified by parties were located in both jurisdictions).

Procedurally, documentary evidence will be ***substantially easier*** to obtain in New Jersey than in India. Obtaining evidence from non-parties is uncommon in the Bombay High Court and rarely compelled. *See* A935-36, ¶¶ 25-27. The District Court failed to adequately address the difficulty involved in obtaining documents in India or give adequate consideration to this serious impediment faced in India. *See Synygy, Inc. v. ZS Assocs., Inc.*, 2009 WL 1532117, at *2 (3d Cir. June 1, 2009) (vacating dismissal where District Court failed to consider "the ease of access to such evidence in both forums, and the availability of process to ensure the cooperation of non-parties"). Sending M&H to litigate in a forum where, practically, it has had no access to sources of evidence would be fundamentally at odds with the purpose of the *forum non conveniens* inquiry. *See Lacey*, 932 F.2d at 186 ("It would be fundamentally unfair . . . to dismiss [the] action against three domestic corporations (over which there is federal jurisdiction) on *forum non conveniens* grounds and send [the plaintiff] to a forum where he might be unable to gain access to essential sources of proof.").

Further, the District Court concluded that private interest factors weighed in favor of dismissal because 74% of the documents produced in the 1782 Proceeding came from India-based custodians. A15-16. The District Court's reliance on this

statistic, presented by Merck without any opportunity for discovery or cross-examination, ignored that relevant custodians in the United States and internationally, outside of India, were first identified *during the 1782 Proceeding*, and that M&H never received the opportunity to obtain their documents or testimony.

Moreover, the District Court's reasoning is circular: none of the documents produced by Merck during the 1782 Proceeding would even have come to light if Plaintiffs did not bring the 1782 Proceeding in the District Court, because there exists no adequate procedural vehicle to timely compel an adverse party's participation in document discovery in India. A935-36, ¶¶ 25-27. This is especially the case where the authorized representative of the Defendants in the India Action filed an AOD categorically stating that the Defendants do not possess any more documents to produce except those filed with the AOD. A935, ¶ 23; A937, ¶ 32. The physical location of documents does not come into play until a party is able to exercise a right to review them. In M&H's case, most of the documents produced in the 1782 Proceeding came from India-based custodians because those were the only custodians M&H was aware of at the outset of the 1782 Proceeding. The 1782 Proceeding thereafter revealed additional key players, including three based in the United States and three outside of India. A911, ¶ 7. The relative ease of access to

sources of proof and practical considerations weigh entirely toward maintaining the

Action in this forum, and certainly do not *tip decidedly* in favor of litigating in India.[9]

The District Court also erred by failing to adequately consider the effect on

the *forum non conveniens* analysis of the fact that most documentary evidence in this

Action would be produced electronically.  Courts overwhelmingly find that the

location of documents and even witnesses should not weigh heavily in the analysis

in the digital age.[10]  For this reason, the Court's exclusive emphasis on the percentage

---

[9] In addition, the Court did not address the fact that Merck destroyed the documents of T. C. Chua, who is based in Singapore, so his documents were not included in the analysis.  A450-51, ¶ 50.

[10] *See, e.g, Shi*, 918 F.3d at 951 ("Logistical hurdles to obtaining evidence and voluntary testimony in the United States present less of a problem than they used to in light of technological advances and the ease of international travel."); *Ma*, 2022 WL 1165623 at *3-4 (denying defendants' motion to dismiss based on *forum non conveniens*; "[T]his Court has recognized that the location of books and records is accorded much less deference in the digital age, when document production can occur electronically" and "as Plaintiff correctly notes, 'given today's technologies, it is generally easy for the parties [and witnesses] to participate in court proceedings remotely.'") (citing cases); *Erbey Holding Corp. v. Blackrock Fin. Mgmt., Inc.*, 78 V.I. 206, 2023 WL 8432847, at *61 (V.I. Super. Ct. 2023) (denying defendants' motion to dismiss based on *forum non conveniens*; reasoning "importantly . . . the physical location of documents and other papers is no longer a compelling factor in a *forum non conveniens* analysis . . . . '[I]n the age of modern technology, the location of documents matters a great deal less in the forum analysis.'"); *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 659 (2009) (affirming order denying motion to dismiss on *forum non conveniens* grounds; "[T]he location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of email, internet, telefax, copying machines and world-wide delivery services, since they can now be easily copied and sent."); *Joint Stock Soc. v. Heublein, Inc.*, 936 F. Supp. 177, 190 (D. Del. 1996) ("[T]he state of

40

of documents that originated from India-based custodians in the 1782 Proceeding was erroneous.

Many of the witnesses M&H has identified that would be relevant to this Action are based in the United States or outside of India, including in Canada, Europe, Australia, and Singapore.  A911-12, ¶¶ 7-9 (Safer Decl.).  Three of the eight signers of the RFC reside in the Unties States, while three reside outside of India (in Australia and New Zealand).  *Id.* ¶ 7.  None of the three witnesses who were deposed in connection with the 1782 Proceeding reside in India.  Two reside in Singapore and one resides in Australia.  *Id.*, ¶ 8.  Finally, two other potential key witnesses reside outside of India: Schering Plough's former Executive Director Dr. V.S. Sohoni (United States) and Ashley Morris (Singapore).  *Id.*

The District Court erred in three respects by crediting Merck's disputed claims about witness location based on a spreadsheet submitted by Merck titled "M&H Witness List."  A16 ("As to witnesses, twenty-eight out of the forty-two individuals identified as potential witnesses . . . appear to reside in India."); A1143-44 (Witness List).  First, it was insufficient for Merck to simply list potential witnesses without explaining their relevance to the resolution of M&H's claims.  Merck had to establish that these were witnesses whose live testimony was essential

---

technology greatly reduces the burden placed on parties with respect to the storage, production, transfer, and exchange of information.").

to Merck and that accessing these witnesses would be far more convenient in India than in this forum. *See Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 145-147 (1st Cir. 2021) (reversing *forum non conveniens* dismissal where even though numerous non-party witnesses resided in Canada (defendant's proffered alternative forum), critical witnesses resided in the United States and defendants failed to explain why the Canadian witnesses were essential to resolution of the case).

Second, 24 of the 42 names on the spreadsheet came from M&H's witness list submitted in the India Action *by M&H*, which involves other defendants and other issues distinct from the claims in this Action. Moreover, M&H's witness list in the India Action included only those witnesses M&H intended to call from M&H's side—it did not include witnesses from Merck, Organon, or non-parties. A912, ¶ 10; A932, ¶ 22(xiv) (M&H's proposed witness list is only relevant to "prove the case of M&H in India Action"). It is not a list of potential witnesses in *this* Action. The listed witnesses, several of whom have since died or left M&H during the fifteen years the India Action has been pending, are relevant to the claims against Organon in the India Action. A912, ¶ 10. The witness list was prepared by M&H prior to discovery in the 1782 Proceeding, which revealed new facts, witnesses, and custodians related specifically to Merck's role and conduct. *Id.* The witnesses relevant to the distinct causes of action instituted against Merck in this Action *based on actions it took in the United States* will be plainly different.

42

Finally, none of the 42 names identified by Merck in its spreadsheet are potential witnesses identified by Merck; they are all names identified by M&H in the India Action, the 1782 Proceeding, or the present Action.  In a *forum non conveniens* motion, "[t]he defendant cannot assert that the plaintiff's chosen forum ***is inconvenient to the plaintiff***. . . .  [T]he defendant must show that the plaintiff's chosen forum ***is inconvenient to the defendant***."  *Vivas*, 392 Ill. App. 3d at 658 (emphasis added); *see, e.g., Curiale v. Tiber Holding Corp.*, 1997 WL 597944, at \*4 (E.D. Pa. Sept. 18, 1997) (*forum non conveniens* dismissal may be proper only where "trial in the chosen forum would . . . inconvenient to the ***defendant***") (emphasis added).

Merck cannot meet its burden to show inconvenience through names identified by M&H at some point in a 15-year litigation wherein trial is yet to commence.  Nor is speculation about potential burdens sufficient to deny a plaintiffs' choice of forum.  *Armada*, 2021 WL 4026177 at \*4; *see Skycliff*, 2018 WL 2332219 at \*7 (finding defendant's contention that "the property is [in India], the assets are there, and the parties are there" too conclusory to meet defendant's burden of establishing inconvenience).  Here, Merck has not sustained its burden to identify specific witnesses relevant to ***this*** Action that are purportedly located in India, specify why those witnesses are relevant, or specify their unavailability in this forum.

43

Overall, Merck failed to credibly show why a New Jersey corporation would find it more convenient to litigate in India as opposed to litigating in its own state. Merck did not prove that India is "decidedly" more convenient than New Jersey for access to witnesses or documents. Therefore, the District Court was constrained to hold that private interest factors weighed in favor of retaining jurisdiction over this Action and erred in finding that they strongly favored dismissal of the Complaint.

The District Court emphasized that litigating two parallel actions in two forums favored dismissal because it impedes an expeditious trial. A17 ("Resources are simply not well served by layering additional litigation on top of a longstanding suit proceeding elsewhere."). First, it is evident from the proceedings in the India Action that the proceedings would not, in reality, be particularly duplicative, especially with respect to discovery: the discovery M&H has obtained in this District—whether documents or witnesses—was entirely novel and had not previously been obtained in India because of its inaccessibility in that forum and because of Merck's fraudulent concealment there. A12; A332-33, ¶ 3; A935, ¶ 23; A935, A937, ¶¶ 25, 32 (Singh Decl.). It is also important to note that the India Action involves a distinct cause of action—breach of contract—while this Action is predicated on tortious interference with contract, tortious interference with prospective business relation and unjust enrichment. A40-43, ¶¶ 55-80.

Second, M&H has no intention of litigating against Merck in two forums. If this Court were to reverse the Opinion and Order, it could direct Merck to withdraw its procedural defenses (e.g., *forum non conveniens* and statute of limitations) in exchange for M&H agreeing to stay the India Action as against Merck.

### 2. Public Interest Factors Do Not Weigh Decidedly in Favor of Proceeding in India

Public interest factors include the relative backlog and administrative difficulties flowing from court congestion in the two jurisdictions; the local interest in having localized controversies decided at home; the interest in having a case tried in the district that is familiar with the applicable law; the avoidance of unnecessary problems in the application of foreign law; and the unfairness of imposing jury duty. *Lony*, 886 F.2d at 640.

The balance of public interest factors does not compel dismissal where both fora have an interest in resolving the dispute. *See Onischenko I*, 174 F. App'x at 122 (vacating dismissal of claims against domestic defendant "[e]ven granting that much of the conduct involved in this litigation occurred while the parties were in Russia"); *Onischenko II*, 536 F. Supp. 2d at 522 (denying motion to dismiss where "[b]oth Russia and New Jersey have connections to and an interest in this dispute").

Here, Merck failed to meet its burden to establish that public interest factors weigh heavily in favor of dismissal, and the District Court abused its discretion in holding otherwise. A17-19.

45

First, the extreme court congestion and the corresponding delay in obtaining a remedy in India favors litigation in New Jersey. *See Networld*, 2014 WL 4724625 at *7 (denying motion to dismiss for *forum non conveniens*; "while this Court has concluded Croatia is an acceptable alternative forum, it appears that court congestion is much greater in the Croatian commercial courts," concluding public interest factors weigh against dismissal). As explained by M&H's expert Dr. Susan Thomas, the Bombay High Court suffers from significant delays. In the Commercial Bench of the Bombay High Court, where the India Action is pending, 60% of cases filed in 2017 continue to remain pending even after 2023. A1187-88, ¶¶ 3.2-3.3. The District Court took this statistic to mean that the delays were not egregious. A9. However, the District Court failed to consider that of the 40% of cases resolved since their filing in 2017, more than half (60%) were resolved through withdrawal by the parties or settlement, and hence is not entirely attributable to the working of the court. A118, ¶ 3.3. **That is, by the end of 2023, only 16% of the cases filed in 2017 were disposed of by trial**. *Id.*

The true pendency rate is likely even worse because the data, which is only available starting in 2017, does not capture those cases suffering the longest delays, like the India Action, which was filed in 2010, transferred to the Commercial Bench in 2017, and remains pending in 2025. A1188-89, ¶ 3.4; A926, ¶¶ 12.

46

The District Court also erred in failing to credit the declaration of Justice Singh, a former Chief Justice of the Bombay High Court and former judge of the Honorable Supreme Court of India, who testified in his declaration that the India Action would take around 10-15 years to be listed for final disposition at the Bombay High Court and, based on the current pendency of cases in India, M&H will have to wait for around 30-35 years for full resolution of its claims including exhaustion of appeals.  A945, ¶ 61 (Singh Decl.).

Second, Merck is a New Jersey corporation, and certain decisions leading up to the termination of the Agreement were made in New Jersey.  A28, ¶ 12.  New Jersey courts and jurors have an interest in holding New Jersey corporations accountable for their tortious actions even if some of those actions unfold abroad. *See Tradimpex Egypt Co. v. Biomune Co*., 777 F. Supp. 2d 802, 810 (D. Del. 2011) (denying motion to dismiss on *forum non conveniens* grounds, in part, because "Delaware, too, has a local interest, in that . . . a Delaware corporation—is alleged to have breached a contract" and concluding "the burden on a Delaware jury is no greater than the burden would be on jurors elsewhere"); *Ma*, 2022 WL 1165623, at *4 (denying motion to dismiss despite all parties being based in China and dispute arose "out of a contract negotiated and formed in China").  For the same reason, it would be fair to impose jury duty on New Jersey residents to resolve this dispute.

Finally, as the District Court acknowledged, the substantive law to be applied does not differ materially between India and New Jersey, eliminating the public interest concern of undertaking any unnecessary conflict of laws analysis or applying unfamiliar law.  A7.  Therefore, this factor is neutral.  *See Lacey,* 932 F.2d at 188 (factor regarding the need to apply foreign law neutral where there is no need to apply foreign law).

With neither the private interest factors nor the public interest factors unequivocally favoring India as an alternative forum, under controlling Third Circuit precedent, the District Court clearly erred in granting Merck's Motion to dismiss.

### D. M&H Cannot Obtain a Meaningful Remedy in India Due to Extreme Delay, Making India an Inadequate Alternative Forum

For India to be an adequate alternative forum, the defendant must be amenable to process there, and the subject matter of the lawsuit must be capable of redress. *Onischenko II*, 536 F. Supp. 2d at 517.  However, even if those elements are fulfilled, where the remedy available in the other jurisdiction is "clearly unsatisfactory," the threshold requirement will not be met.  *Acuna-Atalaya v. Newmont Mining Corp.*, 765 F. App'x 811, 815 (3d Cir. 2019) (alternative forum may not be adequate where "the remedy provided [there] is so clearly inadequate or unsatisfactory that it is no remedy at all"; vacating and remanding for consideration of evidence of corruption in foreign court).

48

Courts have recognized that extreme litigation delays may render a purported remedy so clearly inadequate and unsatisfactory that it vitiates the remedy. *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995) (affirming denial of motion that sought dismissal in favor of Indian forum; finding extreme litigation delays rendered India inadequate alternative; 25-year delay "would render a remedy 'clearly inadequate'"). Where a "plaintiff produces significant evidence documenting the . . . delay (in years) typically associated with the adjudication of similar claims and these conditions are so severe as to call the adequacy of the forum into doubt, then the defendant has the burden to persuade the District Court that the facts are otherwise.'" *Acuna-Atalaya*, 765 F. App'x at 815 (quoting *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1312 (11th Cir. 2001)).

As explained in Section I.B.2, *supra*, M&H submitted ample evidence demonstrating that the Indian courts are severely backlogged. The Supreme Court of India itself has recognized that justice in the Indian courts is subject to "interminable delays."[11]  A39.

The Bombay High Court Commercial Bench also suffers from high unpredictability in both the timing and substance of hearings. A1189-192, ¶¶ 4.1-4.4. The time interval between hearings (which in India refers to any substantive or

---

[11] *See Yashpal Jain v. Sushila Devi and Ors*., 2023/INSC/948.

non-substantive appearance before a court) ranges from 0 to 5 years, and the average time between these appearances is 6 to 24 months. A1191-192, ¶ 4.4. This corresponds with M&H's experience of long periods without any hearing before the Bombay High Court. *See, e.g.,* A936, ¶ 28 (no hearings between 2015 and 2023). Justice Singh estimates that resolution of the India Action (including exhausting all appeals) may take another 30-35 years, an unacceptable delay that renders India clearly an inadequate forum. A944, ¶ 60 (Singh Decl.).

The District Court erred in finding that M&H was partly to blame for the delays, including because it "chose" India as its initial forum, and therefore knowingly brought any problems with the forum onto itself. A11. This is an oversimplification of the issue. M&H was unaware of Merck's central role in the decision to terminate, and M&H could not have known at the outset that Merck would misrepresent to the India court that it was not in possession of additional relevant documents. A935, ¶ 23; A937, ¶ 32 (Singh Decl.).

For the same reason, the District Court erred in concluding that M&H had failed to show that the Bombay High Court had insufficient discovery procedures because it did not appear that M&H sought discovery in the India Action. A12. As explained in Section I.A, *supra*, Indian courts do not typically compel a party to produce responsive documents, and thus M&H's only viable means of obtaining any discovery from Merck related to the India Action was through the 1782 Proceeding.

50

In addition, in the face of contrary evidence, the District Court erred in concluding that delays in India were caused by M&H. A10-11. As explained in Section I.A, *supra*, M&H is powerless to move the India Action forward because it is entirely up to the Bombay High Court when to list the case for hearing, and in the face of evidence that the Bombay High Court failed to list the case for nearly a decade after the India Defendants filed their responsive pleading, it was plain error to attribute this delay to M&H.

## CONCLUSION

This Court should reverse the Opinion and Order of the District Court, reinstate M&H's Complaint, and remand for further proceedings consistent with the decision of this Court.

If this Court fails to reverse the Opinion and Order of the District Court, M&H, a small Indian company, would be denied justice against the unlawful and illegal actions of Merck, a global pharmaceutical giant based in New Jersey.

Respectfully submitted,

MARTIN & HARRIS PRIVATE LIMITED,
By its attorneys,

*/s/ Adam J. Safer*
GOULSTON & STORRS PC
Adam J. Safer
Justin D. Heller
Salome Salia

LINDABURY, McCORMICK,
ESTABROOK & COOPER, P.C.
Steven Backfisch
Jay Lavroff

*Attorneys for Plaintiff-Appellant Martin &
Harris Private Limited*

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I, Adam J. Safer, hereby certify as follows:

1.      I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated:  September 2, 2025                    */s/ Adam J. Safer*
                                            Adam J. Safer

                                            *Counsel for Plaintiff-Appellant*

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 28 and Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 12,997 words, inclusive of all parts of this brief except for the Table of Contents and Table of Authorities.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and a virus detection program, the SentinelOne Virus Protection, version 24.2.3.471, was run on the file containing the electronic version of this brief and no viruses have been detected.

Dated:  September 2, 2025                              */s/Salome Salia*
                                                                   Salome Salia

                                                                   *Counsel for Plaintiff-Appellant*

54

## <u>CERTIFICATE OF SERVICE</u>

I, Salome Salia, hereby certify that on this 2nd day of September, 2025, a copy of the foregoing Brief for Plaintiff-Appellant was electronically filed with the Third Circuit Court of Appeals, and service was made upon counsel of record through the Court's electronic docketing system.

Dated:  September 2, 2025          */s/Salome Salia*
                                    Salome Salia

                                    *Counsel for Plaintiff-Appellant*

# APPENDIX VOLUME 1

i

## TABLE OF CONTENTS

**Page**

**Volume 1**

Notice of Appeal, dated June 5, 2025 ........................ A1

Opinion and Order of the Honorable Claire C.
Cecchi, dated May 23, 2025 .................................. A3

**Volume 2**

District Court Docket Entries .................................... A20

Complaint and Demand for Jury Trial, dated
December 29, 2023, with Civil Cover Sheet ......... A25

Corporate Disclosure Statement, by Plaintiff, dated
December 29, 2023 ................................................ A46

Summons in a Civil Case, issued January 2, 2024 .... A48

Disclosure Statement Pursuant to Fed. R. Civ. P.
7.1(a)(2), by Plaintiff, dated January 3, 2024 ........ A50

Return of Service, dated January 10, 2024 ................ A52

Corporate Disclosure Statement, by Defendant,
dated March 11, 2024 ............................................ A53

Disclosure Statement Pursuant to Fed. R. Civ. P.
7.1(a)(2), by Defendant, dated March 11, 2024..... A56

Notice of Motion, by Defendant, for an Order to
Dismiss, dated March 11, 2024.............................. A58

Declaration of Sharan Jagtiani, for Defendant, in
Support of Motion, dated March 11, 2024............. A61

Exhibit 1 to Jagtiani Declaration -
Plaint in *Martin & Harris Private Limited v.
Organon (India) Limited*, High Court of
Judicature at Mumbai, Suit No. 2943 of 2010
("India Action"), dated November 8, 2010, with
Attachments ........................................................... A89

ii

**Page**

Exhibit 2 to Jagtiani Declaration -
Written Statement on Behalf of Defendants, in
India Action, dated January 12, 2012, with
Attachments ............................................................. A172

Exhibit 3 to Jagtiani Declaration -
Order of the Honorable K. R. Shriram, in India
Action, dated January 28, 2015 ............................. A317

Exhibit 4 to Jagtiani Declaration -
Observation of the Honorable Manish Pitale, in
India Action, dated January 22, 2024 .................... A323

Exhibit 5 to Jagtiani Declaration -
Affidavit of Documents of K.G.
Ananthakrishnan, for Original Defendants and
Plaintiff in the Counterclaim, in India Action,
sworn to February 12, 2015 ................................... A331

Exhibit 6 to Jagtiani Declaration -
Affidavit of Documents of Bharat Bhushan
Sharma, in India Action, sworn to
February 13, 2015 ................................................. A337

Exhibit 7 to Jagtiani Declaration -
Affidavit of Documents of Bharat Bhushan
Sharma, in India Action, sworn to
February 13, 2015 ................................................. A342

Exhibit 8 to Jagtiani Declaration -
Additional Affidavit of Documents of Bharat
Bhushan Sharma, in India Action, sworn to
March 7, 2015 ........................................................ A353

Exhibit 9 to Jagtiani Declaration -
Affidavit of Evidence of Bharat Bhushan
Sharma, for Plaintiff, in India Action, sworn to
March 16, 2015, with Minutes............................... A364

Exhibit 10 to Jagtiani Declaration -
List of Witnesses, in India Action, dated
March 16, 2015 ..................................................... A410

iii

**Page**

Exhibit 11 to Jagtiani Declaration -
Chamber Summons, in India Action, dated
March 16, 2015 .................................................... A414

Exhibit 12 to Jagtiani Declaration -
Order of the Honorable Shri D.V. Sawant, in
India Action, dated February 9, 2016 .................... A429

Exhibit 13 to Jagtiani Declaration -
Affidavit of Bharat Bhushan Sharma, for
Plaintiff, in India Action, affirmed
February 5, 2024 .................................................. A431

**Volume 3**

Exhibit 14 to Jagtiani Declaration -
(i) Letter from Rajendra Barot, Sr., *et al.* to The
Prothonotary & Senior Master, dated
February 13, 2024 ................................................ A461

(ii) Order of the Honorable Manish Pitale, in
India Action, dated February 6, 2024 .................... A463

(iii) Reply Affidavit of Anjan Sen, for Defendant
No. 1, in India Action, sworn to
February 13, 2024 ................................................ A465

Exhibit 15 to Jagtiani Declaration -
"Commercial Courts Act, 2015: An Empirical
Impact Evaluation," by *Vidhi Centre for Legal
Policy* .................................................................. A538

Exhibit 16 to Jagtiani Declaration -
Chart regarding 2023 Case Clearance Rate of the
High Court of Judicature at Bombay ..................... A590

Exhibit 17 to Jagtiani Declaration -
Classification of Cases Pending at the End of the
Quarter Ending on (September 30th) 2023 of the
High Court of Judicature at Bombay ..................... A592

iv

**Page**

Exhibit 18 to Jagtiani Declaration -
Statement of Work Done by the High Court of
Judicature at Bombay During the Quarter Ending
on (September 30th) 2023...................................... A600

Exhibit 19 to Jagtiani Declaration -
Charts regarding Information About Commercial
Cases for the Month of December 2023 of the
High Court of Judicature at Bombay ..................... A608

Exhibit 20 to Jagtiani Declaration -
Maharashtra Act No. XLVI of 2023 to Amend the
Bombay City Civil Court Act, 1948 ...................... A610

Exhibit 21 to Jagtiani Declaration -
(i) Notice of the Honorable Sachin B. Bhansali
regarding Bombay City Civil Court
(Amendment) Act, 2023, dated January 22, 2024 . A613

(ii) List of Suits and Commercial Suits Likely to
be Transferred in View of the Bombay City Civil
Court (Amendment) Act, 2023 .............................. A615

Declaration of Lisa C. Dykstra, for Defendant, in
Support of Motion, dated March 11, 2024............. A907

Proposed Order Granting Defendant's Motion to
Dismiss the Complaint with Prejudice ................. A909

Declaration of Adam J. Safer, for Plaintiff, in
Opposition to Motion, dated May 7, 2024............. A910

Exhibit A to Safer Declaration -
Excerpts from the Transcript of Hearing held
before the Honorable Michael A. Hammer on
May 1, 2023, in *In re Martin & Harris Private
Limited v. Merck & Co., Inc.*, U.S. District Court
for the District of New Jersey, Case No.
20-17070 ................................................................ A913

v

                                                                                          **Page**

Exhibit B to Safer Declaration -
Email from Chandrahas Kutty to Rajiv Sharda,
dated May 27, 2009 ................................................ A917

**Volume 4**

Declaration of Bisheshwar Prasad Singh, for
Plaintiff, in Opposition to Motion, sworn to
May 7, 2024 ........................................................... A923

Exhibit A to Singh Declaration -
Affidavit of Bharat Bhushan Sharma, for
Plaintiff, in India Action, sworn to
February 5, 2024, with Attachments ...................... A946

Exhibit B to Singh Declaration -
Response Affidavit of Bharat Bhushan Sharma,
for Plaintiff, in India Action, sworn to
March 4, 2024, with Attachments .......................... A1155

Declaration of Dr. Susan Thomas, for Plaintiff, in
Opposition to Motion, sworn to May 6, 2024 ....... A1183

Annex 1 to Thomas Declaration -
*Curriculum Vitae* of Susan Thomas ...................... A1197

Annex 2 to Thomas Declaration -
Measuring Court Performance, Compendium of
Prior Work, dated May 2024 .................................. A1203

Annex 3 to Thomas Declaration -
Charts regarding Data Description ........................ A1419

Annex 4 to Thomas Declaration -
Survival Analysis Approach .................................. A1420

Reply Declaration of Laura H. McNally, for
Defendant, in Further Support of Motion, dated
June 12, 2024 ........................................................ A1424

vi

**Page**

Exhibit A to McNally Reply Declaration -
Classification of Cases Pending at the End of the
Quarter Ending on (December 31st) 2023 of the
High Court of Judicature at Bombay ..................... A1427

Exhibit B to McNally Reply Declaration -
Classification of Cases Pending at the End of the
Quarter Ending on (March 31st) 2024 of the High
Court of Judicature at Bombay ............................. A1435

Exhibit C to McNally Reply Declaration -
Spreadsheet regarding Witness List of Martin &
Harris Private Limited .......................................... A1443

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN & HARRIS PRIVATE LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MERCK & CO. INC.,<br><br>Defendant. | Civil Action No. 2:23-cv-23418-CCC-AME<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Plaintiff, Martin & Harris Private Limited, appeals to the United States Court of Appeals for the Third Circuit from the Opinion & Order granting Defendant Merck & Co. Inc.'s motion to dismiss Plaintiff, Martin & Harris Private Limited's Complaint, entered by the United States District Court for the District of New Jersey in this action on May 23, 2025 (ECF No. 36).

Dated: June 5, 2025

Respectfully submitted,

*/s/ Jay Lavroff*

Jay Lavroff, Esq.
**LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.**
A Professional Corporation
53 Cardinal Drive
P.O. Box 2369
Westfield, New Jersey 07091
(908) 233-6800
jlavroff@lindabury.com

Adam Safer, Esq. (*pro hac vice*)
Justin Heller, Esq. (*pro hac vice*)
**GOULSTON & STORRS PC**
730 Third Avenue, 12th Floor
New York, New York 10017
(212) 878-6900
asafer@goulstonstorrs.com
jheller@goulstonstorrs.com

A1

Salome Salia, Esq. (*pro hac vice*)
**GOULSTON & STORRS PC**
One Post Office Square, 25th Floor
Boston, MA 02109
(617) 482-1776
ssalia@goulstonstorrs.com

*Attorneys for Plaintiff Martin & Harris Private
Limited*

A2

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN AND HARRIS PRIVATE LIMITED<br><br>           Plaintiff,<br><br>v.<br><br>MERCK & CO., INC.<br><br>           Defendant. | Civil Action No.: 23-23418<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion to dismiss (ECF No. 6) ("Mot.") plaintiff Martin and Harris Private Limited's ("Plaintiff") complaint (ECF No. 1) ("Cmplt.") on grounds of *forum non conveniens* filed by defendant Merck & Co., Inc. ("Defendant").[1] Plaintiff opposed the motion (ECF No. 17) ("Opp.") and Defendant replied in support (ECF No. 18) ("Reply").[2] The motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, Defendant's motion to dismiss is **GRANTED**.

## I.     BACKGROUND

This case arises out of Defendant's decision to allegedly terminate without compensation a longstanding business relationship between Plaintiff and one of Defendant's subsidiaries. Plaintiff is an India-based pharmaceutical company with its office in New Delhi, India. Cmplt. ¶ 9. Plaintiff alleges that in the 1930s, it began a relationship with the pharmaceutical company

---

[1] Defendant also sought dismissal, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. Because the Court grants Defendant's motion for dismissal based on *forum non conveniens*, it does not address this alternative argument. *See Jun Zhang v. Gain Cap. Holdings, Inc.*, No. 20-9426, 2021 WL 2103233, at *10 (D.N.J. May 25, 2021) ("[T]he Court dismisses this action for *forum non conveniens* and need not reach the issue of whether the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).").

[2] Plaintiff's opposition was originally filed at ECF No. 14. But that filing raised issues regarding local rules about page limits and footnote font-size requirements. *See* ECF No. 16. Pursuant to a joint stipulation, Plaintiff refiled its opposition in a format that complied with the local rules at ECF No. 17. *See* ECF No. 34.

A3

Organon India Limited ("Organon"). *Id.* ¶¶ 2, 14. As described below, Organon was later acquired by Defendant. *Id.* ¶¶ 27, 30. At that time, however, Plaintiff alleges that the parties entered into an "exclusive arrangement" pursuant to which Plaintiff would act as Organon's importer and distributor in India "so long as Organon continued to do business" there. *Id.* ¶¶ 14, 19-20. Plaintiff acknowledges this arrangement was never "reduced to writing," aside from a letter agreement signed in 2001 that did not "fully capture" its contours. *Id.* ¶¶ 2, 19. Plaintiff states it invested significant resources in reliance on this unwritten agreement. *Id.* ¶¶ 22.

Organon was acquired in 2007 by the pharmaceutical company Schering Plough. *Id.* ¶ 24. According to Plaintiff, Schering Plough thereafter decided to terminate the agreement between Plaintiff and Organon. *Id.* ¶ 26. But Plaintiff states it was never informed of this decision. *Id.* ¶ 27. Instead, Schering Plough allegedly continued the relationship for the time being to "avoid jeopardizing" the Indian release of a new drug for which it had sought Plaintiff's help. *Id.* ¶ 29.

Schering Plough then merged with Defendant, a New Jersey-based pharmaceutical company, in 2009. *Id.* ¶ 30. The following year, Defendant also allegedly decided to end the relationship between Organon and Plaintiff. *Id.* ¶ 34. Plaintiff was informed of this decision in August 2010. *Id.* ¶ 38. According to Plaintiff, the individuals involved in the decision were not "aware" of the unwritten agreement between it and Organon and accordingly did not provide "compensation" for the termination. *Id.* ¶ 40.

In November 2010, Plaintiff commenced an action against Defendant in the Bombay High Court in Mumbai, India (the "India Litigation"). *Id.* ¶ 46. Plaintiff sought damages equivalent to about $286 million for the "unlawful and unilateral" termination of its unwritten agreement with Organon. *Id.* ¶¶ 46-47. More than ten years later—during which time Plaintiff states that Defendant

2

A4

"failed to produce any discovery"—Plaintiff filed suit in this Court[3] seeking discovery materials for aid in the India Litigation pursuant to 28 U.S.C. § 1782.[4] *Id.* ¶ 48. Plaintiff received those materials. *Id.* ¶ 49.

Plaintiff filed the instant suit in this Court on December 29, 2023. ECF No.1. According to Plaintiff, it seeks recovery here because India "is not a viable forum." *Id.* ¶ 8. Specifically, Plaintiff states the Indian court system is "impossibly backlogged" and its own case is "nowhere near resolution." *Id.* ¶¶ 50-51. It further contends there have been no "material" developments in its case since 2015, and the action "appears hopelessly stalled." *Id.* ¶ 54.

Plaintiff's complaint asserts three causes of action: tortious interference with contract; tortious interference with prospective business relations; and unjust enrichment. *Id.* ¶¶ 55-80. Defendant filed the instant motion to dismiss pursuant to *forum non conveniens* on March 11, 2024. ECF No. 11.

## II.   <u>STANDARD OF REVIEW</u>

The doctrine of *forum non conveniens* allows a court to dismiss an action when a foreign tribunal would be a "more appropriate and convenient forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 425 (2007). To make this determination, courts follow a three-step analysis. First, the court must find whether there is an "adequate alternative forum" to hear the case. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). If so, the court moves on to consider the "amount of deference" that should be accorded to the plaintiff's choice of forum. *Id.* Finally, the court is directed to "consider and balance" several private and

---

[3] The matter is found at docket number 2:20-cv-17070.
[4] This statute "allows district courts to authorize litigants to obtain evidence for use in foreign proceedings." *In re Ex Parte Glob. Energy Horizons Corp.*, 674 Fed. Appx. 83, 85 (3d Cir. 2016).

A5

public interest factors described below. *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010). The burden of persuasion is borne throughout by the defendant. *Id.*

## III.   DISCUSSION

For reasons discussed below, the Court finds that: (1) India is an adequate alternative forum; (2) Plaintiff's choice of forum is due reduced deference and; (3) public and private interest factors strongly favor trying this case in India. Dismissal is therefore granted.[5]

### A.   India is an Adequate Alternative Forum

An alternative forum is generally adequate if the defendant can be served with process there and plaintiff's claims are cognizable. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). A claim is cognizable even if the substantive law is "less favorable." *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981). These minimal requirements are "rarely a barrier" to dismissal. *Tech. Dev. Co., Ltd. v. Onischenko*, 174 Fed. Appx. 117, 120 (3d Cir. 2006). A forum may nonetheless be deemed inadequate, however, in the "rare circumstance" that the remedy it offers is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 Fed. Appx. 200, 203-04 (3d Cir. 2017).

### a.   Defendants are Amenable to Process and Plaintiff's Claims are Cognizable

The parties do not appear to dispute that Defendant can be served in India. This is unsurprising, as the parties are already involved in litigation there. Cmplt. ¶¶ 46-54. And

---

[5] Plaintiff argues that it is premature to decide a *forum non conveniens* motion prior to discovery in this action. Opp. at 11-12. The Third Circuit counsels, however, that such motions "should be decided at an early stage" so the parties do not "waste resources on discovery." *Loney v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir. 1991); *Polanco v. Dominican Republic*, 705 F. Supp. 3d 426, 434 (E.D. Pa. 2023). The Supreme Court, too, describes *forum non conveniens* as a "threshold, nonmerits" issue, *Sinochem*, 549 U.S. at 433, that does not need "extensive investigation" but can be decided on the parties' affidavits, *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529. Insofar as Plaintiff relies on state court decisions that guide otherwise, those decisions do not bind this Court when applying the federal common law doctrine of *forum non conveniens. See Kyko Glob., Inc. v. Prithvi Info. Sols. Ltd.*, No. 18-1290, 2020 WL 1159439, at *36 (W.D. Pa. Mar. 10, 2020) (noting *forum non conveniens* is a "federal common law doctrine" and following analysis "dictate[d]" by the Third Circuit).

Defendant has provided a declaration that it was served in that case. ECF No. 11-2 ¶ 18. This requirement is therefore met. *See Chigurupati v. Daiichi Sankyo Co., Ltd.*, No. 10-5495, 2011 WL 3443955, at *4 (D.N.J. Aug. 8, 2011) ("The extensive litigation history in India between the parties evinces Defendant's claim that [it] is amenable to process in India.").

The parties also do not appear to dispute that Plaintiff's claims are cognizable in India. Indeed, they agree that the substantive law to be applied does not differ materially between the forums. *See* Mot. at 25 (stating "New Jersey and India law both recognize causes of action" for the tort and contract claims asserted); Opp. at 21 (agreeing that "there is no conflict between the laws of India and the laws of New Jersey"). This requirement is therefore also met. *See Ace Am. Ins. Co. v. First Call Env't, LLC*, No. 21-2331, 2021 WL 4037459, at *3 (E.D. Pa. Sept. 3, 2021) (finding plaintiff's claims cognizable where its "routine contract and tort claims" could be heard in alternative forum).

  b. <u>Indian Courts are Not Inadequate Due to Either Delay or Limited Discovery Procedures</u>

Plaintiff argues that despite meeting the above requirements, India is nonetheless an inadequate forum because the remedy it offers is "so clearly inadequate or unsatisfactory that it is no remedy at all." Opp. at 21 (quoting *Acuna-Atalaya v. Newmont Mining Corp.*, 765 Fed. Appx. 811, 815 (3d Cir. 2019)). To support this claim, Plaintiff points to alleged "significant delays" in the Bombay High Court and insufficient "access to sources of evidence." Opp. at 20, 24.

   *i. The Bombay High Court is Not Inadequate Due to Delay*

A forum may be deemed inadequate for failure to provide a remedy if it suffers from "profound and extreme" delay. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995). In *Bhatnagar*, the Third Circuit upheld a district court finding that India did not

constitute an adequate alternative forum because the "average" case in the Calcutta High Court (the relevant foreign tribunal) would take 15-20 years to resolve, along with 3-6 years of appeals to follow. *Id.* The court explained that delays are inevitable in litigation, but found that waiting twenty-five years for finality was "intolerable." *Id.* A remedy so postponed, it held, was "no remedy at all." *Id.* at 1227-28.

Invoking *Bhatnagar*, Plaintiff argues that India is an inadequate forum because the Bombay High Court suffers from similar delays. Opp. at 22. In support, Plaintiff provides declarations from Dr. Susan Thomas, an economist and statistician who has studied "case lifecycles" at the Bombay High Court, and Mr. Bisheshwar Prasad Singh, a former Chief Justice of that court.[6] ECF No. 14-3 ¶¶ 2.1-2.5; ECF No. 14-2 ¶ 7. Dr. Thomas opines that based on datasets reviewed by her team, an estimated 60% of commercial cases filed in the Bombay High Court in 2017 remained pending as of 2023. ECF No. 14-3 ¶¶ 3.1-3.3. Dr. Thomas also finds that the "mean interval" between hearings at the court is six months, but that the range around the mean "varies widely" indicating "significant unpredictability" of scheduling. *Id.* ¶ 4.4. For his part, Justice Singh opines that lengthy delays are "accepted" in India and predicts that the India Litigation will be unresolved for "around 30-35 years." ECF No. 14-2 ¶¶ 5, 60.

Defendant counters with its own data to argue that the Bombay High Court is not plagued by the type of delay that would trigger *Bhatnagar*. Mot. at 13. It provides a declaration from Sharan Jagtiani, a Senior Advocate with over two decades of experience litigating before Indian tribunals. ECF No. 11-2 ¶¶ 3-4. Based on a review of publicly available information, Mr. Jagtiani concludes that as of 2023, only approximately 9% of commercial cases filed in the Bombay High Court

---

[6] "In deciding a motion to dismiss on the grounds of *forum non conveniens*, the court may consider materials outside of the pleadings, including affidavits and exhibits." *Alonso Hidalgo v. Agustawestland Phila. Corp.*, No. 20-6393, 2024 WL 388381, at *1 n.2 (E.D. Pa. Feb. 1, 2024) (collecting cases); *Turner v. Lam Rsch. Corp.*, No. 23-435, 2024 WL 4766208, at *3 n.6 (D. Del. Nov. 13, 2024).

remained pending for over ten years. *Id.* ¶ 60. Mr. Jagtiani also explains that the monetary threshold for jurisdiction at India's City Civil Courts was recently raised, leading to the expected transfer of around 1,360 commercial cases (with 4,523 pending as of September 2023) away from the Bombay High Court. *Id.* ¶¶ 60, 65-66. He opines that these transfers will further reduce delays. *Id.*

The Court finds that the Bombay High Court is not beset by the type of delay that would render India an inadequate forum. In *Bhatnagar*, the district court was presented with evidence that the "average" case in the relevant court would take about twenty-five years to resolve. 52 F.3d at 1228. The parties here provide evidence that as of 2023, 40% of commercial cases in the Bombay High Court reached finality in six years or less, while 91% of cases reached finality in ten years or less. ECF No. 14-3 ¶¶ 3.1-3.3; ECF No. 11-2 ¶ 60. These timelines fall short of the "egregious magnitude" described in *Bhatnagar*. 52 F.3d at 1228. And Defendant provides evidence that over a thousand cases will be transferred away from the Bombay High Court, likely reducing these timelines. ECF No. 11-2 ¶¶ 65-66. As for Justice Singh's prediction that the India Litigation will take 30-35 years, this conclusion is speculative and belied by the data. *See Derensis v. Coopers & Lybrad Chartered Accts.*, 930 F. Supp. 1003, 1010 (D.N.J. 1996) (declining to rely on "speculation" that was contradicted by parties' experts regarding foreign court system in deciding *forum non conveniens*). In short, the Court is convinced that the "average" case in the Bombay High Court does not face the "profound and extreme delay" identified in *Bhatnagar* as rendering redress illusory and the forum inadequate. *See In re Bancredit Cayman Ltd.*, No. 6-11026, 2008 WL 5396618, at *4 (Bankr. S.D.N.Y. Nov. 25, 2008) (finding possibility of 6-10 year delay did not render forum inadequate); *In re I.E. Liquidation, Inc.*, No. 6-62179, 2015 WL 5307446, at *4 (Bankr. N.D. Ohio Sept. 10, 2015) (noting that courts with "significant" delays of less than 15-25 years are "consistently found" to be adequate forums) (collecting cases)).

A9

Although this finding is based on the evidence presented here, it is buoyed by several other courts' rejections of similar claims of severe delay in the Indian court system. In *Payoda, Inc. v. Photon Infotech, Inc.*, for example, the plaintiff argued that "endemic delays" rendered India an inadequate forum and estimated that trying its case there would take 25-30 years. No. 14-4103, 2016 WL 1059515, at *4 (N.D. Cal. Mar. 17, 2016). The court rejected this argument in part based on its finding that Indian civil procedure had been streamlined in the years since *Bhatnagar*. *Id.* Other courts have concluded likewise. *See, e.g.*, *BMR & Assocs., LLP v. SFW Cap. Partners, LLC*, 92 F. Supp. 3d 128, 138, 140-41 (S.D.N.Y. 2015) (rejecting argument that "delays in the courts of India are such that litigating there would . . . deprive Plaintiffs of a fair opportunity to litigate their claims"); *Gosain v. State Bank of India*, No. 9-4172, 2011 WL 13383362, at *2 (S.D.N.Y. June 15, 2011) (rejecting argument that "long delays in India's court system" render it not "an adequate alternative forum"). And courts in this district—although not specifically faced with claims of delay—have in the years since *Bhatnagar* found that Indian courts are an adequate alternative. *See Emqore Envesecure Private Cap. Tr. v. Singh*, No. 20-07324, 2022 WL 4104261, at *7 (D.N.J. Sept. 7, 2022) ("India, a country with an advanced legal system, is an adequate alternative forum for this action."); *Chigurupati*, 2011 WL 3443955, at *4. This context supports the Court's finding.

As for delay in the India Litigation itself, Plaintiff appears to be at least partially at fault. To start, the court in that action observed in 2024 that based on the record it was "only the plaintiff who is to blame" for the slow pace of proceedings, because it has not "pursued the matter with alacrity and in 'good faith.'" ECF No. 11-6 ¶ 14. Plaintiff refers to this finding as "inexplicable" and "non-binding" but does not provide good reason to doubt its accuracy. Opp. at 9. And its expert only states that it was "unusual" for the court to opine on a matter unrelated to the merits of the case, without casting doubt on its truth. ECF No. 11-2 ¶ 48. In any event, Plaintiff's expert

admits—even while claiming that it is "not responsible" for any delays—that Plaintiff failed to timely file its required Evidence Affidavit and has sought several adjournments. ECF No. 11-2 ¶ 4; *see also Id.* ¶¶ 22, 28 (seeking four adjournments in 2023-2024). These facts undercut Plaintiff's argument that congestion in the Indian courts is solely to blame for its prolonged litigation. *See Payoda*, 2016 WL 105915, at *4 (rejecting inadequacy argument based on delay in the Bombay High Court in part because "any delay is the result of [plaintiff's] own choice").

Finally, the Court notes that whatever misgivings it may have about proceeding in India, it was Plaintiff who decided to file suit there originally. Cmplt. ¶ 46. Any delays allegedly endemic to its court system would therefore have been foreseeable. *See BMR & Assocs., LLP*, 92 F. Supp. 3d at 141 (rejecting inadequacy argument in part because "[a]ny perceived backlog in the Indian courts" would not have been "unforeseeable at the time [plaintiff] chose" to litigate there). More broadly, Plaintiff chose to transact business in India, and to make purportedly binding unwritten agreements there. Cmplt. ¶¶ 1-8. As one court has remarked in similar circumstances, it is somewhat "anomalous" for a party to perform business in India, and to make contracts there, only to then claim that "delay make[s] India an unreasonable judicial forum." *Ramakrishna v. Besser Co.*, 172 F. Supp. 2d 926, 931 (E.D. Mich. 2001). After all, parties do not transact business in foreign jurisdictions "in reliance upon our courts." *Kyla Shipping Co. v. Shanghai Heavy Indus. Co., Ltd.*, No. 9-765, 2012 WL 1565634, at *6 (S.D. Ala. Apr. 30, 2012) (quoting *Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 480 (1912)).

ii. *The Bombay High Court is Not Inadequate Due to Its Discovery Rules*

In addition to purported delays, Plaintiff argues that the Bombay High Court is inadequate because of its allegedly insufficient discovery procedures. As Plaintiff states, it "has had no access to sources of evidence there." Opp. at 24. Although Plaintiff does not fully elaborate on this point,

the Court understands it to be a reference to assertions in the complaint that Defendant "failed to produce any discovery" in the India Litigation, leading Plaintiff to file a Section 1782 action in this Court. *See* Cmplt. ¶ 48.

However, it does not appear that Plaintiff sought discovery in the India Litigation on the material that it complains was only available through Section 1782. To wit, in the latter action, the court found that Plaintiff had "fail[ed] to explain" any such earlier efforts at discovery and concluded it was "not even clear" that efforts had been made. *In re Martin & Harris Priv. Ltd.*, No. 20-17070, 2021 WL 234069, at *5 (D.N.J. June 14, 2021). This is seemingly confirmed by Plaintiff's expert, who does not opine that discovery in the India Litigation was unsuccessful, but only that it would be "expensive" and "time consuming." ECF No. 14-2 ¶¶ 24, 26. Insofar as this argument appears to be a rehash of Plaintiff's position that litigation in India is lengthy and therefore costly, it has been addressed above.

Even if Plaintiff can establish that Indian discovery procedures are more narrowly circumscribed than ours, however, this would not support a finding of inadequacy. Notably, differences in rules of procedure—which are to be expected in a foreign tribunal—are "not dispositive" in an adequacy analysis. *Howden N.A. Inc. v. Ace Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478, 490 (W.D. Pa. 2012). This includes rules of discovery. *Id.* ("As many courts have held, however, differences in the scope of discovery—indeed, even the complete absence of pretrial discovery—do not render a forum inadequate." (quoting *Deirmenjian v. Deutsche Bank, A.G.*, No. 6-774, 2006 WL 7479756, at *10 (C.D. Cal. Sept. 25, 2006)); *Path to Riches, LLC on behalf of M.M.T. Diagnostics (2014), Ltd. v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 287 (D. Del. 2018) ("[T]he fact that the alternative forum provides for only limited discovery relative to that available in the United States is not by itself enough to render the forum inadequate."). Indeed, finding

otherwise would "effectively preclude" *forum non conveniens* dismissal to the many forums—including "all continental European jurisdictions"—that provide less discovery than courts in the United States. *Windt v. Qwest Commc'ns Intern., Inc.*, 544 F. Supp. 2d 409, 426 (D.N.J. 2008). In short, a foreign tribunal's discovery procedures may be "not as extensive" as those available here, and yet nonetheless be "perfectly adequate." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160-61 (3d Cir. 2010) (quoting *Ernst v. Ernst*, 722 F. Supp. 61, 67-68 (S.D.N.Y. 1989).

**B. Plaintiff's Forum Choice is Due Reduced Deference**

A "strong presumption of convenience" typically attaches to a plaintiff's choice of forum. *Kisano*, 737 F.3d at 873. That choice receives "less deference," however, when the plaintiff is foreign. *Id.*; *Windt v. Qwest Commc'ns Intern. Inc.*, 529 F.3d 183, 190 (3d Cir. 2008). This difference arises from a "reluctance to assume" that a forum in the United States is "a convenient one" for a plaintiff located abroad. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1991); *see also Kisano*, 737 F.3d at 873-74 ("When the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (quoting *Sinochem*, 549 U.S. at 430)). But a foreign plaintiff can overcome this reluctance with a "strong showing" that the local forum is indeed convenient. *Kisano*, 737 F.3d at 875; *Levien v. hibu plc*, 475 F. Supp. 3d 429, 443 (E.D. Pa. 2020).

Plaintiff here is a foreign company and has not made a "strong showing" that this forum is convenient; its choice accordingly receives "less deference." Plaintiff argues that New Jersey is convenient because it is Defendant's home state. Opp. at 13. But when, as here, the case has "little or no connection" to the chosen forum besides the defendant's place of incorporation, this suggests

11

A13

that the forum "is not convenient." *Wit Software v. Talkdesk, Inc.*, No. 23-94, 2023 WL 3454193, at *5 (D. Del. May 15, 2023); *Wilmot*, 712 Fed. Appx. at 203 (upholding district court's decision to give "significantly less deference" to plaintiff's forum choice where "the lawsuit's only connection to the [forum] is that it is the defendant's place of incorporation"). On its own, Defendant's tie to New Jersey is simply "insufficient to transform" this foreign dispute "into a localized one." *Brunswick GmbH v. Bowling Switzerland, Inc.*, No. 7-471, 2008 WL 2795936, at *4 (D. Del. July 18, 2008).

The cases cited by Plaintiff, *Onischenko* and *Lony*, are inapposite. Opp. at 13. In *Onischenko*, for example, the court found that New Jersey was a convenient forum because the foreign plaintiff could not obtain jurisdiction over the defendant elsewhere, and because plaintiff itself was moving to the United States. 174 Fed. Appx. at 122. Neither of these facts are found here: Defendant is participating in the Indian Litigation and Plaintiff does not represent that it is moving. As to *Lony*, the court noted that the defendant's home forum housed "much of the evidence" needed to prove liability. 886 F.2d at 634. Once again, this consideration goes far beyond Plaintiff's bare assertion that New Jersey is convenient because Defendant is incorporated there.

### C. The Private and Public Interest Factors Strongly Favor Dismissal

Turning to the private and public interest factors, these must "tip decidedly" towards the foreign locale to justify dismissal. *Windt*, 529 F.3d at 192. Where the plaintiff's forum choice receives reduced deference, however, this is a lower bar to clear. *See Howden N.A. Inc. v. Ace Prop. & Cas. Ins. Co.*, 875 F. Supp. 2d 478, 499 (W.D. Pa. 2012) (interest factors must "overcome" deference to plaintiff's chosen forum); *see also Dabbous v. Am. Exp. Co.*, No. 6-11345, 2009 WL 1403930, at *9 (S.D.N.Y. May 8, 2009) ("[W]here, as here, the deference provided to Plaintiff's

choice of forum is limited due to the inconvenience of that forum, the weighing of factors need not be so lopsided in favor of dismissal."). As described below, both sets of factors weigh strongly in favor of dismissal and therefore overcome the reduced deference accorded to Plaintiff's choice of forum. *See Walters v. LandPro Equip., LLC*, No. 23-1745, 2023 WL 4919657, at *2-3 (E.D. Pa. Aug. 1, 2023) (dismissing where plaintiff's choice of forum was given "minimal weight" and was "outweighed" by private and public interest factors).

a.    Private Interest Factors Strongly Favor Dismissal

Private interests to consider include "ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial." *Kisano*, 737 F.3d at 873. This list is not exhaustive, and some factors may not be relevant in each case. *Delta Air Lines*, 619 F.3d at 295. Ultimately, the analysis is trained on "the convenience of the litigants." *Piper Aircraft*, 454 U.S. at 241.

Defendant argues that private considerations favor dismissal because the "vast majority" of evidence and witnesses are in India, which it describes as the "center of events." Mot. at 20. Defendant also points to the "substantial inconvenience" for the parties of litigating two parallel actions regarding the same dispute. *Id.* at 21. Plaintiff asserts to the contrary that "many" witnesses and most document custodians reside outside India. Opp. at 17. Plaintiff also argues that regardless of the location of evidence and witnesses, each forum is equally convenient because documents can be transferred electronically, and witnesses can be deposed remotely. Opp. at 16, 19.

The Court agrees with Defendant that the location of evidence and witnesses strongly favors dismissal. Regarding evidence, 74% of the documents produced through the Section 1782 action came from India-based custodians, whereas 2% came from custodians in the United States.

13

A15

ECF No. 11-23 ¶ 3. Although Plaintiff seeks to discount these figures by noting that six of the eleven document *custodians* were based outside of India, Opp. at 17; ECF No. 14-1 ¶ 9, this does not rebut the fact that a substantial majority of relevant *documents* came from inside that country. *See Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 525 (D.N.J. 1998) (finding private interest favors dismissal where "majority of documentary evidence" found outside forum). As to witnesses, twenty-eight out of the forty-two individuals identified as potential witnesses either during the India Litigation, the Section 1782 action, or in Plaintiff's opposition motion, appear to reside in India. *See* ECF Nos. 11-12 (witness list in India Litigation), 14-1 ¶ 7 (Plaintiff's declaration identifying additional potential witnesses), 18-6 (spreadsheet listing witnesses and their locations). This makes sense, as this case concerns business dealings and purported agreements made within that country. *See* Cmplt. ¶¶ 1-8. Because most of the evidence and witnesses are thus located abroad—where the disputed conduct occurred—these considerations strongly favor dismissal. *See Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, No. 14-7386, 2015 WL 4598809, at *5 (D.N.J. July 29, 2015) ("Given that the majority of evidence and witnesses are located [abroad] . . . the relative ease and access to sources of proof weigh strongly in favor of dismissal."); *see also Church v. Glencore PLC*, No. 18-11477, 2020 WL 4382280, at *5 (D.N.J. July 31, 2020) ("Under the private interest factors, dismissal is generally favored when a majority of the evidence and witnesses are located in a foreign forum and the alleged misconduct is centered there.").

As for Plaintiff's contention that electronic documents can be easily transmitted and depositions can be taken remotely, the Court is unpersuaded that these facts render location inconsequential. If this were so, the location of evidence and witnesses would never play a role in the contemporary *forum non conveniens* analysis. But Plaintiff has provided no citation to that effect, and courts continue to analyze these factors in the age of word processing and

telecommunications. *See, e.g.*, *Wilmot*, 712 Fed. Appx. at 205 (upholding finding that private interests favor dismissal because "nearly all witnesses, evidence, and other sources of proof are outside the United States").

Finally, Plaintiff fails to address the argument that proceeding in two parallel actions regarding the same conduct impedes an "easy, cost-effective, and expeditious trial." This potential inconvenience—which will occur if this litigation goes forward—further weighs in favor of dismissal. *See Eurofins*, 623 F.3d at 162 (favoring dismissal where the parties would otherwise "face the substantial inconvenience of litigating two actions, which involve a common nucleus of operative facts, in two fora"); *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 869 (7th Cir. 2015) ("When dismissal might eliminate the need for similar litigation in multiple places, *forum non conveniens* is favored."). Resources are simply not well served by layering additional litigation on top of a longstanding suit proceeding elsewhere. *See Sinochem*, 549 U.S. at 435 ("Judicial economy is disserved by continuing litigation in the Eastern District of Pennsylvania given the proceedings long launched in China.").

 b.  Public Interest Factors Strongly Favor Dismissal

Public interests to consider include "administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty." *Kisano*, 737 F.3d at 873. As with the private factors, this list is not exhaustive, nor is every consideration relevant to each case. *Delta Air Lines*, 619 F.3d at 295. At bottom, the analysis looks to "the convenience of the forum." *Piper Aircraft*, 424 U.S. at 241.

Defendant argues that public considerations favor dismissal because India, as the locus of events, has a greater local interest in the action's outcome. Mot. at 22. Defendant also points to the potential for administrative difficulties resulting from inconsistent judgments should the case proceed in both forums. *Id.* at 21. Plaintiff argues to the contrary that New Jersey has a greater local interest in holding its corporations "accountable" for allegedly unlawful actions abroad. Opp. at 20. Plaintiff also reiterates that administrative considerations favor New Jersey because of the "extreme court congestion" in India. *Id.*

The Court agrees with Defendant that dismissal is strongly favored because India has a much greater local interest in deciding this matter. Not only did the events underlying this dispute occur there, but the Bombay High Court is already overseeing litigation regarding this dispute. *See Chigurupati*, 2011 WL 3443966, at *5 (finding public interest favors dismissal where "the locus of the majority of the relevant conduct occurred in India" and "there are related litigations taking place in India"). And although Plaintiff points to Defendant's New Jersey citizenship, this alone fails to outweigh the India-centric nature of the controversy. *See Wit*, 2023 WL 3454193, at *6 ("Where the locus of a dispute is foreign, as it is here, a defendant's incorporation in the forum state is insufficient to transform the matter into a localized controversy." (quoting *Brunswick*, 2008 WL 2795936, at *4)). Without a substantial local connection, moreover, it would make little sense to burden New Jersey residents with jury service in this action. *Windt*, 529 F.3d at 193 ("[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service.").

The Court also agrees with Defendant that administrative considerations further favor dismissal. Namely, if this action were to continue alongside the India Litigation, there is a possibility for conflicting orders and judgments creating "unnecessary administrative challenges."

16

A18

*Emqore*, 2022 WL 4104261, at *8-9 (noting "administrative difficulties considering the related litigation currently pending in India" including "the risk of conflicting judgments and violation of court orders"); *Eurofins*, 623 F.3d at 163 (finding dismissal "will avoid the possibility of incongruous results stemming from parallel actions" in foreign tribunal). As to congestion in India, this claim has already been addressed above and found to be overstated. Accordingly, this concern is outweighed by India's strong local interest in deciding the matter and the potential challenges arising from parallel proceedings. *See Suhail*, 2015 WL 4598809, at *6 (finding public interest factors favor dismissal where the "New Jersey community has little interest in the dispute, while [the alternative forum] has a great interest in it" and litigating in New Jersey would "present unnecessary administrative difficulties").

IV.   **CONCLUSION**

For the reasons discussed above, the Court finds that: (1) India is an adequate alternative forum; (2) Plaintiff's forum choice of New Jersey is accorded reduced deference; and (3) private and public interest factors strongly favor dismissal. The Court therefore concludes that dismissal is appropriate pursuant to *forum non conveniens*.

**Accordingly, IT IS** on this 23rd day of May, 2025,

**ORDERED** that Defendant's motion to dismiss (ECF No. 6) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED** without prejudice; and it is further

**ORDERED** that the clerk of court shall mark this matter closed.

**SO ORDERED.**

*/s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**

17

A19